991 So.2d 1138 (2008)
Harold McDANIEL
v.
CHARITY HOSPITAL AND MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS.
No. 2008-CA-0229.
Court of Appeal of Louisiana, Fourth Circuit.
August 13, 2008.
*1139 Frank B. Hayne III, New Orleans, LA, for Plaintiff/Appellant.
Dwight C. Paulsen III, Nicole M. Duarte, Richard P. Voorhies III, Lemle & Kelleher, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
Plaintiff, Harold McDaniel, appeals a summary judgment granted in favor of defendant, Medical Center of Louisiana at New OrleansCharity Campus. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY:
According to the petition filed by Mr. McDaniel, in proper person, he presented at the emergency room of the Medical Center of Louisiana at New Orleans Charity Campus (hereinafter Charity), on May 8, 1996, complaining of pedal edema, commonly known as swelling of the feet, as well as other circulatory, heart and lung conditions. Mr. McDaniel alleged that in the course of the examination, an unknown health care provider employed by Charity examined his eyes "to become better acquainted with identifying and treating cataract implants of the kind in claimant's right eye." He further alleged that the artificial lens in his right eye became dislodged as a result of the examination, precipitating treatment at another health care facility. Mr. McDaniel claimed that the treatment did not meet the standard of *1140 care for eye examinations of persons with corneal transplants.
Both parties conducted discovery, which included the deposition of Dr. E. Colin McComiskey, whom plaintiff had named in answers to interrogatories as the person he intended to call as an expert witness at trial.
Charity filed a motion arguing that because plaintiff had failed to identify an expert who would testify at trial that Charity had breached the standard of care and/or that any such breach caused and/or contributed to his complained of injuries, it was entitled to summary judgment as a matter of law.
In his opposition memorandum, Mr. McDaniel averred that the opinion of the Medical Review Panel was wrong because it evaluated acts of the defendant which occurred on a date other than the date on which Mr. McDaniel was injured. He further argued that other supporting evidence attached to Charity's motion and memorandum failed to overcome pertinent allegations contained in plaintiff's petition.
After a hearing, the trial court granted summary judgment in favor of Charity. This appeal followed.

LAW AND ANALYSIS:

Motion to Strike:
Preliminarily, we address Charity's motion to strike portions of Mr. McDaniel's brief. Specifically, Charity argues that because Mr. McDaniel did not raise the legal theories of lack of informed consent or res ipsa loquitur in the trial court, he is precluded from asserting those theories for the first time on appeal. After thoroughly reviewing the record, we agree. The only mention of res ipsa loquitur found in the record is a footnote in Mr. McDaniel's memorandum in opposition to the motion for summary judgment. The memorandum does not expound on this theory, nor is there evidence that this theory was argued to the trial court. The theory of lack of informed consent does not appear to be raised anywhere in the trial record. Accordingly, we strike all portions of Mr. McDaniel's brief dealing with the legal theories of lack of informed consent or res ipsa loquitur.

Standard of Review:
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Duncan v. U.S.A.A. Ins. Co., 06-363, p. 3 (La.11/29/06), 950 So.2d 544, 546. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Wright v. Louisiana Power & Light, 06-1181, p. 17 (La.3/9/07), 951 So.2d 1058, 1070; King v. Parish Nat'l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545.
Louisiana Code of Civil Procedure art. 966 B provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Subpart C(2) provides that:
[t]he burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out *1141 to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La.Code Civ. Proc. art. 966 C(2).

Law and Analysis:
Louisiana Revised Statute 9:2794 A sets forth the plaintiff's burden of proof in a medical malpractice suit:
In a malpractice action based on the negligence of a [hospital] ... the plaintiff shall have the burden of proving:
1. The degree of knowledge or skill possessed or the degree of care ordinarily exercised by [hospitals] ... in the State of Louisiana in a similar community or locale and under similar circumstances....
2. That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
3 That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer the negligence without the guidance of an expert. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228.
Charity moved for summary judgment arguing that Mr. McDaniel would be unable to support his claims for malpractice because he had failed to identify an expert to testify that Charity had breached the applicable standard of care, or that any such breach had caused Mr. McDaniel's injuries. In support of its motion, Charity submitted Mr. McDaniel's submission to the medical review panel, the panel's opinion and reasons, interrogatories propounded to Mr. McDaniel, the responses thereto, and an excerpt of Dr. McComiskey's deposition, to which was attached a letter from Dr. McComiskey to Mr. McDaniel's former attorney (the letter is a synopsis of the treatment rendered to Mr. McDaniel, with Dr. McComiskey's opinion as to the possible cause of Mr. McDaniel's injury). In the submission to the medical review panel, Mr. McDaniel claimed that the lens in his right eye became dislodged as a result of an examination at Charity. The medical review panel concluded that the record did not support Mr. McDaniel's claims. The interrogatories propounded to plaintiff inquired as to the name of any expert plaintiff intended to call at trial to support his allegations of malpractice. Mr. McDaniel replied that Dr. Colin McComiskey and Dr. Walter Cockerham would testify. The excerpt from Dr. McComiskey's deposition revealed that, in his opinion, Dr. Cockerham would be able to offer very little in support of Mr. McDaniel's claims because Dr. Cockerham was a retina specialist, and Mr. McDaniel's eye problems were anterior in nature and did not involve his retina. He explained that Mr. McDaniel reported to him that he had presented to Charity with medical issues unrelated to his eyes, but that in the course of the triage examination, a nurse dislodged his lens while examining his eye with a penlight. Dr. McComiskey stated that in his opinion, it would require excessive manual force to dislodge a lens, much more force than would be used in a penlight examination. In Dr. McComiskey's letter to plaintiff's *1142 former attorney, he stated: "As for examination of the anterior segment by penlight or more sophisticated methods, there is little intrinsic danger to this procedure which is performed by thousands of health care professionals with varying levels of experience every day. In order for trauma or force to move the lens, I believe two preexisting conditions would have to be met. First, the lens could be missized at the time of placement, which does not seem to be the case, as present observation reveals a good fit. Secondly, the side of the haptic would have been placed perilously close to the iridectomy at the original surgery. Again I believe significant force would be required to dislodge a lens."
In response to the motion for summary judgment, Mr. McDaniel argued that the medical review panel's opinion was "grossly erroneous." This statement is based on allegations that the panel considered the wrong dates of treatment at Charity. Our review of the panel's opinion reveals that the panel examined and considered all of the medical records submitted for Mr. McDaniel; therefore, any misstatement of the date of treatment is harmless. Mr. McDaniel also argued that because Dr. McComiskey's report was not in affidavit form, the trial court should have disregarded it. The report to which plaintiff refers was attached to Dr. McComiskey's deposition, thus authenticating it. We find no basis for the trial court to have disallowed it as evidence.
Mr. McDaniel argued extensively in his memorandum that his petition set forth facts that Charity had failed to dispute. Specifically, he notes that other portions of Dr. McComiskey's deposition support his allegation that the nurse in the emergency room used excessive force while examining his eye. Our review of these additional passages does not disclose any support for this proposition. Indeed, Dr. McComiskey stated that it would "take a lot ofa lot of pushing, sure." Dr. McComiskey further stated that in the course of his career, he had never heard of anyone dislodging an inner ocular lens from a penlight examination.
In addition to the above deposition testimony and medical records from Charity, the only other support for Mr. McDaniel's opposition was his own affidavit. He stated that during one of his several visits to Charity's emergency room in April and May of 1996, he reported to the nurse that he had a lens implant. The nurse examined his eye with a penlight while she forcibly held his eye open. His affidavit states that the force of holding his eye open caused his lens to become dislodged. He was referred by a friend to Dr. Walter Cockerham for treatment, but Dr. Cockerham in turn referred him to Dr. McComiskey.
In a case very similar to the instant matter, a physician charged with malpractice filed a motion for summary judgment, with supporting documents that suggested plaintiff had only two sources of expert opinion. One was the opinion of the medical review panel, which found no negligence on the defendant's part, and that of a physician whose opinion basically favored the defendant's position. This Court stated: [P]laintiff could produce no expert testimony to support the malpractice suit in accordance with R.S. 9:2794. In our opinion, these undisputed facts entitled [the physician] to judgment as a matter of law." Fortenberry v. Berthier, 503 So.2d 596, 597-598 (La.App. 4 Cir.1987).
After the required de novo review of the record, we find that Mr. McDaniel has failed to demonstrate that he will be able to carry his burden of proof at trial. The only experts identified by plaintiff as potential witnesses at trial are Drs. Cockerham *1143 and McComiskey. Dr. Cockerham did not treat Mr. McDaniel, but rather referred him to Dr. McComiskey. The record does not contain a report by Dr. Cockerham, nor was his deposition taken and entered into the record. Dr. McComiskey's deposition testimony and report supports Charity's position that the penlight examination performed by the triage nurse could not have dislodged Mr. McDaniel's lens implant.
"The burden on the moving party may be discharged by `showing'-that is, pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Samaha v. Rau, 07-1726, p. 9 (La.2/26/08), 977 So.2d 880, 886, citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Applying this tenet, we find that Mr. McDaniel has not offered any evidence, other than the factual allegations of his petition and his own self-serving affidavit, to carry his necessary burden of proof.
Accordingly, we grant Charity's motion to strike portions of Mr. McDaniel's brief, and affirm the judgment of the trial court dismissing his claims against Charity, with prejudice.
MOTION TO STRIKE GRANTED; AFFIRMED.
TOBIAS, J., concurs in the result and assigns reasons.
TOBIAS, J., concurs in the result and assigns reasons.
I respectfully concur in the result and write separately only because I disagree with one statement made by the majority.
I find that Mr. McDaniel's mention in a footnote, rather in the body of the brief, the doctrine of res ipsa loquitur is sufficient to raise the issue of the doctrine. However, in this case, I do not find that the doctrine is applicable and the defendant is entitled to an affirmation of the trial court's judgment.