JAMES F. McKAY III, Judge.
 

 Lin this marine insurance case, the defendant, Navigators Insurance Company, appeals the trial court judgment holding it liable for damages based upon an excess insurance policy it issued. The defendant also appeals the trial court’s denial of its claim for indemnification. We affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 On or about December 15,1996, the port stern anchor of the
 
 M/V Oceanic Seahorse
 
 hooked a subsea electric cable owned by the Trinidad and Tobago Electric Commission (T-TEC). This caused significant damage to a major electrical conduit running between Trinidad and Tobago. At the time of the accident, the
 
 M/V Oceanic Seahorse,
 
 which was owned by Tidewater Marine Services, Inc. (Tidewater), had been chartered by Amoco and then sub-chartered by Tucker Energy Services, Inc. (Tucker) to perform subsea cable repairs off the coast of Trinidad. In the contract, Tidewater required that Tucker indemnify Tidewater up to five million dollars for any damage that might occur during the work.
 

 
 *1243
 
 ^Commercial Union Assurance, PLC (Commercial Union) issued a property insurance policy to T-TEC and paid T-TEC for the damage to the cable. Thereafter, Commercial Union brought suit against Tidewater in Orleans Parish. Thereupon, Tidewater brought a third party action against Tucker for contractual indemnity under the sub-charter contract. Tucker had specifically added the
 
 M/V Oceanic Seahorse
 
 to the schedule of covered vessels in its primary P & I policy.
 
 [1]
 
 This policy provided $1.5 million of liability coverage. Tucker also had an existing excess P & I policy underwritten by Navigators Insurance Company (Navigators).
 

 Tidewater and Commercial Union reached a settlement, and Tucker’s primary P & I underwriter honored Tucker’s obligation to indemnify Tidewater and paid its policy limits of $1.5 million. Navigators, however, denied coverage and Tidewater contributed $500,000.00 toward the settlement. Tidewater reserved its rights against Navigators as an additional assured/third party beneficiary under the excess policy. For added measure, Tucker assigned any rights it had against Navigators for this loss over to Tidewater. Shortly thereafter, Tidewater brought suit against Navigators to recover its settlement contribution as well as defense costs (items that were covered under Tucker’s primary and excess P & I policies). Navigators denied liability and third-partied Marsh Inc. and Marsh USA, Inc. (collectively Marsh); Marsh was an insurance broker who procured Tucker’s insurance policies.
 

 | ¿Trial in this matter was bifurcated into liability and damages phases. The liability phase of the case was tried to the court, without a jury on four days, December 11 and 12, 2007 and April 8 and 9, 2008. On April 29, 2008, the trial court found coverage for the
 
 M/V Oceanic Seahorse
 
 under the excess policy issued by Navigators to Tucker. The trial court also dismissed Navigators’ third-party demand against Marsh. After the entry of that judgment, Tidewater filed motions to tax its trial expert’s fees as costs, to admit certain exhibits into evidence that would support its claims against Navigators for indemnity and defense, and for a monetary judgment for the amount of its claim for indemnity and defense. On July 14, 2008, the trial court awarded Tidewater $1,535,519.00, together with judicial interest from the date of judicial demand until paid. The trial court also awarded Tidewater $24,300.00 in expert fees. Navigators now appeals the trial court’s judgment.
 

 DISCUSSION
 

 On appeal, Navigators raises the following assignments of error: 1) the trial judge erred in concluding that excess coverage which Navigators Insurance Company had provided to its insured with respect to one vessel had been expanded by Navigators to include a different vessel; 2) even if excess coverage is held to have been expanded to include a different vessel, the coverage was “following form”
 
 [2]
 
 coverage and the underlying primary policy did not have coverage for any contractual indemnity obligation owed by the insured, nor could any of the policy’s | coverages be assigned by the insured to anyone else; 3) even if there were excess coverage which included contractual indemnity and as to which assignment by the insured was permitted, the insured actually had no reimbursable claim under the policy and thus nothing to assign; 4) the trial judge erred in dismissing Naviga
 
 *1244
 
 tors’ third-party claim against Marsh, whose sub-standard conduct either wholly or partially caused Navigators to be cast in judgment to Tidewater; and 5) the trial judge erred in including certain items in the damage award.
 

 Assignment of Error No. 1
 

 In its first assignment of error, Navigators contends that the trial court erred in concluding that the excess policy it issued to Tucker provided coverage for the
 
 M/V Oceanic Seahorse.
 
 Navigators contends that its excess policy was limited to a single vessel, a liftboat known as the
 
 Gene Bums Elevator.
 
 Navigators’ position is largely based on two documents, a binder
 
 [3]
 
 and a blank form of the American Institute Hull Clauses. At trial, Navigators’ insurance broker opined on how he believed the American Institute Hull Clauses form would have read in this case, but that was really nothing more than conjecture on his part because no actual form was filled out in this case. As to the binder, Louisiana law holds that the binder is of no effect or import once the policy is issued. La. R.S. 22:870.
 
 See also Liberty Mut. Ins. Co. v. Ads, Inc.,
 
 357 So.2d 1360, 1362-1363 (La.App. 4 Cir.1978);
 
 Commercial Credit Equip. Corp. v. Evans,
 
 302 So.2d 727, 728 (La.App. 3 Cir.1974).5 Navigators’ position is largely based on the opinion testimony of its experts and not the actual facts and documents pertinent to this case.
 

 On the other hand, the trial court specifically found that trial exhibit 14 introduced by Tidewater was a policy as it was properly counter-signed by Navigators’ duly authorized representative, called itself a policy no fewer than thirteen times, and contained the essential terms required for it to qualify as a policy. Navigators failed to issue any policy documents necessary to restrict or limit the coverage under its policy to a single vessel. The trial court also found that this excess policy was by its terms a “following form” P
 
 &
 
 I policy that provided coverage for any vessel covered by the primary policy. The
 
 M/V Oceanic Seahorse
 
 was covered by the primary policy. Because this was a following form policy and Navigators failed to limit or restrict its coverage, the law provides that the excess policy adopts the terms and conditions of the primary P & I policy. Accordingly, based on the record before this Court, we find no error regarding Navigators’ first assignment of error.
 

 Assignment of Error No. 2
 

 In its second assignment of error, Navigators contends that the underlying policy did not cover contractual indemnity and could not be assigned. However, Navigators never raised these defenses in its answer or at the liability phase of the trial. Navigators first attempted to raise these defenses after the liability phase of the trial. The trial court found that any and all defenses or claims regarding liability should have been argued at trial and any defenses asserted after the trial |6were waived and abandoned. Because Navigators failed to assign the trial court’s ruling on Navigators’ waiver and abandonment as error, it is precluded from raising these defenses on appeal.
 
 Outdoor Systems, Inc. v. Entergy Corp.,
 
 2001-0613 (La.App. 4 Cir. 12/19/01), 804 So.2d 848, 852;
 
 Box v. French Market Corp.,
 
 2000-1880 (La.App. 4 Cir. 9/5/01), 798 So.2d 184, 190. Accordingly, Navigators is precluded from asserting defenses on liability that it failed to raise at trial.
 
 See McDaniel v. Charity Hospital,
 
 2008-0229 (La.App. 4 Cir. 8/13/08), 991 So.2d 1138, 1140.
 

 Even if Navigators were not precluded from raising its second assignment
 
 *1245
 
 of error, the assignment of error has no merit. The trial court held that Navigators’ excess policy follows the coverage of the primary P & I policy. The primary policy lists the following as assureds: “Tucker Energy Services, Inc. and/or affiliated and/or associated companies and/or as expiring.” Tucker was hired by T-TEC to perform repair work on a cable resting on the seabed. Tucker needed a vessel from which to perform the work, and sub-charted the
 
 M/V Oceanic Seahorse
 
 from Tidewater for that purpose. Tidewater provided the vessel along with her captain and crew, and Tucker furnished its own crew to perform the repair work on the cable. As a company engaged by Tucker to perform an integral part of Tucker’s work for T-TEC, Tidewater would qualify as an “associated company” of Tucker for purposes of assured status.
 

 Assignment of Error No. 3
 

 |TIn its third assignment of error, Navigators contends that Tidewater has no reimbursable claim under the policy. However, Navigators did not raise this defense at trial and is precluded from doing so now on appeal for the same reasons discussed in assignment of error number two.
 

 Even if Navigators’ third assignment or error was not waived, its contention that Tidewater has no reimbursable claim under the policy is wrong. The purpose of protection and indemnity (P & I) insurance is to provide protection to a shipowner for damages caused by the operation of its vessel. Because maritime law provides that a vessel may be seized to satisfy liability claims against it, the typical hull policy includes P & I coverage up to the value of the vessel. In the instant case, Tucker was contractually obligated to obtain insurance coverage to indemnify Tidewater from any damages arising out of its operation of the
 
 M/V Oceanic Seahorse.
 
 One of the primary reasons for Tucker’s procuring these insurance policies was to indemnify Tidewater. The insurer should have been aware of this situation.
 
 See generally Gulfwide Boat Rentals, Inc. v. Security Ins. Co.,
 
 292 So.2d 796 (La.App. 1 Cir.1974). It is clear from the circumstances that Tidewater has a reimbursable claim under the policy.
 

 Assignment of Error No. 4
 

 In its fourth assignment of error, Navigators argues that Marsh should bear the entire loss, or alternatively, half of it.
 

 The trial court found no liability on the part of Marsh, for the simple reason that Navigators’ liability was based on a policy document created by Somerset 1 ¡^Insurance Services, Inc. (Somerset) and signed by Somerset on behalf of Navigators with Marsh playing no part in the creation of the document. In any event, Marsh was the agent of Tucker, not Navigators. There is no cause of action for negligently causing another party to enter into a contract. Neither Tucker nor Tidewater sued Marsh. Navigators sued Marsh only for indemnity.
 

 However, in this Court, Navigators raises a new set of arguments against Marsh, based principally on a misrepresentation theory. As stated above, Navigators is not permitted to raise arguments in this Court that were not urged in the court below.
 
 See Graubarth v. French Market Corp.,
 
 2007-0416 (La.App. 4 Cir. 10/24/07), 970 So.2d 660, 664;
 
 Boudreaux v. State, DOTD,
 
 2001-1329 (La.2/26/02), 815 So.2d 7, 9.
 

 Texas law governs Navigators’ claims against Marsh. Navigators never disputed the applicability of Texas law in the trial court. Under Texas law, common law indemnity has been essentially abolished. Common law indemnity survives only in two limited circumstances: (1) in
 
 *1246
 
 products liability actions and (2) in negligence actions when a defendant’s liability is purely vicarious.
 
 Aviation Office of America, Inc. v. Alexander & Alexander of Texas, Inc.,
 
 751 S.W.2d 179, 180 (Tex.1988);
 
 Cypress Creek Util. Serv. Co. v. Muller,
 
 640 S.W.2d 860, 864 (Tex.1982). Neither of those limited circumstances is involved in the instant case. Furthermore, there is no contract of any kind between Navigators and Marsh, and thus there can be no contractual indemnity. There is really no way under the facts |9and pertinent law that Marsh can be liable in this case. Accordingly, Navigators’ fourth assignment of error has no merit.
 

 Assignment of Error No. 5
 

 In its fifth assignment of error, Navigators contends that the trial court erroneously included several items in its damage award totaling $304,348.80. This assignment of error is without merit. As the excess P & I insurer of the
 
 M/V Oceanic Seahorse,
 
 Navigators was responsible for all defense costs once the primary policy limits were exhausted. Tidewater presented its billing entries to the trial court and the trial court saw how the bills were apportioned and was aware why certain experts were retained. Based on our review of the record, the trial court’s award of damages for these items was not clearly wrong or manifestly erroneous.
 

 CONCLUSION
 

 Based on the record before this Court, we find nothing clearly wrong or manifestly erroneous with the trial court’s judgment. Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . P & I insurance provides protection to a shipowner for damages caused by the operation of its vessel.
 

 [2]
 

 . A following form policy is an insurance policy that adopts the terms and conditions of another insurance policy.
 

 [3]
 

 . A preliminary document used in the insurance industry to temporarily bind coverage pending issuance of a policy. See La. R.S. 22:870.