EDITH BROWN CLEMENT,
Circuit Judge, dissenting.
The majority preserves the district court’s internally inconsistent rulings by inventing a framework the court below did not apply. For the first time, the majority declares the existence of a “claims-adjustment agreement” that it cobbles together from various documents the district court itself held did not “constitute part of the policies of insurance.” The majority finds
no error in the district court’s implicit finding that the parties in effect had two agreements: one in which Reliance would provide insurance coverage based on payroll, and PMI would pay the adjustable premiums; and another in which Reliance, through its third-party claims administrator, would administer the claims-handling process for all of PMI’s employees, and PMI would pay all claims valued under $100,000.
*576 Op. 575 (emphases added). Under this approach (using two separate agreements), the majority affirms the district court’s (1) award of partial relief to Reliance in the form of adjusted premiums and (2) rejection of Reliance’s claim for deductible losses. Such an approach assumes the valid formation of a contract governing claims handling that is without support in the district court opinion or the record. Because neither the district court nor the majority identifies when or how Reliance incurred the contractual obligations it supposedly breached, I respectfully dissent from the denial of Reliance’s claim for deductible payments.
I.
The district court found that the policies of insurance constituted binding contracts between PMI and Reliance and awarded Reliance $349,140.63 in additional premium payments. In finding “that the policies of insurance were confected and delivered as required by law,” the district court addressed in a footnote various other documents, agreements, and binders that may or may not have formed part of the contract between the parties:
Hartan’s files also contain drafts of a separate “Insurance Program Agreement.” However, that document was never signed or agreed to by PMI. In fact, Pray, of Hartan, returned the insurance program agreement to Reliance, requesting alterations and updated language, which Reliance admits was never sent. There is a separate document entitled “Personnel Management Casualty Insurance Program Effective: 04/01/98 W.C. Binder NWA 014567-00,” prepared by Mike McKeown of Reliance for the 1998 policy and a separate document prepared by Cynthia Artale of Reliance for the 1999 renewal policy, which were both identified by Pray as “binders” of insurance. PMI asserts that the acts of Pray in returning the agreements to Reliance unsigned, for revision, was not “for the purpose of thereby making a valid and binding contract of insurance,” but rather, repudiating that draft and requesting another. Reliance contends, and the court agrees, that the Program Agreements do not constitute part of the policies of insurance.
R. 1324 n. 8 (internal citations omitted). The district court thus did not consider the IPAs or CIP binders to be part of the insurance policies it enforced against PMI when it ordered the company to pay Reliance the additional premium amounts.
The “implicit finding” of a second agreement governing claims adjustment procedures likely comes from another footnote the district court used to explain why, in its opinion, Reliance’s right to reimbursement was subject to the aggregate limits specified in the insurance binders. The district court stated:
As mentioned earlier, Reliance admits that no insurance program agreement was ever signed by the parties. Reliance instead asserts that the insurance program agreement was never meant to be a part of the policy. Importantly, Reliance always considered that the Program Agreement was a part of the Insurance Program, because it contained the provisions, reflected in the binders, establishing aggregate limits. Those limits were of considerable benefit to PMI, because they limited PMI’s maximum exposure for deductible losses. Rebanee has always given PMI the benefit of the aggregate limits.
R. 1328 n. 12. The findings in the footnote do not show how either an IPA (“Program Agreement”) or CIP binder (“Insurance Program”) could bind Reliance with any contractual obligation. First, “no insurance program agreement was ever signed *577 by the parties,” suggesting that there was never mutual consent to be bound or a “meeting of the minds.” Second, even if “Reliance always considered that the Program Agreement was part of the Insurance Program,” the Insurance Program never constituted part of the insurance policies themselves.
Additionally, the CIP binders, standing alone, could not have bound the parties with contractual obligations. Section 22:870 of the Louisiana Revised Statutes provides: “A ‘binder’ is used to bind insurance temporarily pending the issuance of the policy. No binder shall be valid beyond the issuance of the policy as to which it was given.” La.Rev.Stat. Ann. § 22:870. Louisiana appellate courts have held that a “binder is of no effect or import once the policy is issued,” Commercial Union Assurance P.L.C. v. Tidewater Marine Serv., Inc., 15 So.3d 1241, 1244 (La.Ct.App.2009), and that “[i]t is the policy which controls and the Binder does not constitute part of the policy, nor does it create any rights ... other than during its effective period.” Liberty Mut. Ins. Co. v. Ads, Inc., 357 So.2d 1360, 1363 (La.Ct.App.1978) (internal citations omitted).
The CIP binders fall squarely within § 22:870. As the majority opinion acknowledges, in 1998, PMI’s “broker asked Reliance for a quote, and in response, Reliance prepared a document called a ‘Casualty Insurance Program’ (or ‘CIP’) Binder, which outlined coverages, premiums, deductibles, aggregate limits, and other financial terms on which the policy would be issued,” and “[a] functionally identical CIP Binder and Binder of Insurance were issued for the second policy year before the renewed policy was delivered.” Op. 566 (emphases added). The CIP binders became invalid upon the respective policies’ issuance, and could not create additional rights after that point.
The majority seeks to evade § 22:870 in three ways. First, it reasons that Reliance makes this argument for the “first time on appeal,” and cites as supporting authority cases where parties waived arguments by not making them before the district court. Second, it claims that “the district court relied on Reliance’s arguments set forth in its written closing arguments” where Reliance “acknowledged that it had contractual obligations under the policies to furnish loss run reports and to properly adjust the claims.” Finally, the majority finds that “[t]he district court could very well have concluded that the CIP documents were not merely insurance ‘binders’ within the meaning of section 22:870, but rather that section V of the CIPs, along with the IPAs and the CSA, set forth the parties’ separate agreement for Reliance to handle the administrative processing of PMI’s claims.” Op. 574 (emphasis added).
With respect to the majority’s waiver point, the district court considered the IPAs and CSA when it determined whether the insurance policies were properly confected and delivered so as to create binding contracts. In that context, Reliance “contend[ed], and the court agree[d], that the Program Agreements d[id] not constitute part of the policies of insurance.” R. 1324 n. 8 The record shows that both parties operated under the assumption that the insurance policies themselves — and whatever other documents constituted part of them — were the only relevant contracts for determining the parties’ respective obligations. Reliance had no reason to anticipate that the district court would find that unsigned, extrinsic documents conferred independent contractual obligations.
As to the district court’s supposed reliance on the written closing arguments, the majority misconstrues Reliance’s position *578 regarding contractual obligations. Reliance never contested that it had contractual obligations to properly adjust claims. Its contention is that the contractual obligations for claim adjustment are defined by the policies, and not by the CIP binders or the IPAs. Reliance’s representations to the district court that the majority cites to are consistent with this position.
Finally, the majority’s claim that the district court “could very well have concluded” that the CIP documents constituted a “separate agreement” has no basis in the district court opinion or the record. The district court’s opinion never references a “elaims-adjustment agreement” or a “separate agreement.” In section II.C.2 of its opinion, the district court states that “PMI contends that Reliance was in material breach of its obligations under the policy as a result of its failure to communicate with the insured with respect to its claims and losses,” and that “[ejvidence of communications under the policies between PMI and either Reliance or Crawford was scant, at best.” R. 1330 (emphases added). Without explaining how, the district court seems to have equated breaches of the various CIP provisions with a breach of the policies themselves. See R. 1336 (“Reliance asserts that there is no provision in the policies that obligated it or Crawford to communicate with PMI or consult with PMI during the adjustment of the losses. However, the Casualty Insurance Program indicates otherwise.”).
II.
The district court did not make any specific finding that Reliance (or Crawford) improperly adjusted claims under the policies. Rather, it concluded that “Reliance breached its obligations under the policy to properly adjust the claims as a result of its failure to communicate.” R. 1340 (emphasis added). The key question thus becomes what contractual obligations to communicate did Reliance owe PMI.
The actions or omissions that the district court identified as breaches violated provisions found only in the “Casualty Insurance Program documents of both policies,” and not the policies themselves. Because these documents did not “constitute part of the policies of insurance,” there could be no legal breach for Reliance’s failure to comply with those provisions.
Reliance did in fact communicate, albeit minimally, with PMI. As the district court’s findings of fact note, “Susan May-nor, who was PMI’s Human Resource Director during the first policy year, admitted that she received loss runs from Crawford, and identified the loss runs at trial.” R. 1321. PMI employees also initiated the claims process for each claim by filing the First Report of Injury forms with Crawford. PMI fails to show how the contracts required anything more. Because detailed communication requirements were not contained in the policies themselves, the district court could not have found breach for failure to communicate.
Nor did Reliance breach a statutory duty of good faith for insurers. “The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.” La.Rev.Stat. Ann. § 22:1973(A). The district court made no finding that Reliance improperly adjusted any claim, and insurers that have paid settlements are “entitled to a presumption of law that [they] exercised reasonableness and good faith in making the settlements.” Ins. Co. of N. Am. v. Binnings Constr. Co., 288 So.2d 359, 362 (La.Ct.App.1974). The district court cited no evidence from PMI *579 that would rebut this presumption and cannot have based its finding of breach by applying the statutory duty of good faith for insurers.
Finally, although PMI may have had an action in equity or quasi-contract if it proved that it justifiably relied to its detriment on representations Reliance made in the insurance binders, see La. Civ. Code Ann. art. 1967, PMI never made such an argument, and the district court opinion did not rely on any equitable theory to justify its conclusions.
In summary, the district court could not have found that Reliance breached any contractual obligation to PMI regarding claims handling because no contract existed between the two parties other than the insurance policies themselves. I would reverse the district court with respect to Reliance’s deductible payments. Rather than affirming, this court should at a minimum remand the case so that the district court can define (1) whether any valid contract existed between PMI and Reliance governing claims adjustment, and, if so, (2) the contractual obligations between the two parties. Only after the district court identifies which terms in which of the numerous “policies,” “documents,” and “binders” give rise to binding contractual obligations can it determine (3) whether either party breached a contract, and (4) what the proper remedy should be.