PAUL A. BONIN, Judge.
| ,The immovable property located on the lakeside corner of Dauphine Street and *933 Esplanade Avenue in the French Quarter is subject to a regime established by the Declaration of Condominium for Port Esplanade Condominium Association. The Port Esplanade condominiums include two distinct residential buildings.[1] The plaintiffs and appellants are the current owners of the condo units located in the building facing Dauphine, and for convenience we refer to them as the “Dauphine Owners”.[2] The defendant and appellee is the condominium association, and for convenience we refer to it as the “Association”. The current owners of condo units located in the building facing Esplanade Avenue, whom for convenience we refer to as the “Esplanade Owners”[3], are no longer party defendants.
|20n July 31, 2002, the Esplanade Owners, or in some cases their predecessors-in-title, adopted a Second Amendment to the original Declaration which purported to transfer the use of certain Common Elements, such as a swimming pool and passageways, to the exclusive use (as Limited Common Elements) of the Esplanade Owners.[4] The Dauphine Owners’ common predecessor-in-title, The Meaghan Frances Hardcastle Trust, which for convenience we will refer to as the Trust, did not join in the adoption of the Second Amendment. Sometime later, however, the Trust transferred its ownership interest in the Dau-phine condo units to Michael Wilkinson, and that transfer was expressly “made, executed and accepted subject to” the publicly recorded Second Amendment.
The Dauphine Owners argue that the Second Amendment is invalid and of no legal effect because such a change in ownership of the Common Elements required the unanimity of all unit owners. The Association argues that the validity of the adoption of the Second Amendment depends upon the agreement of only at least 66.66% of the ownership interests, according to their interpretation of the Declaration’s requirements, and that the vote of 69.96% of the ownership interests exceeded that requirement. Alternatively, if unanimity is required, the Association argues that the Second Amendment was merely a relative nullity when adopted and |sthat the Trust, as the sole owner of the outstanding 30.04% required for unanimity, confirmed the Second Amendment by the terms of its transfer to Mr. Wilkinson.
Both the Dauphine Owners and the Association moved for summary judgment. The district judge granted summary judgment in favor of the Association and dismissed the Dauphine Owners’ lawsuit with prejudice.[5]
*934 Upon our de novo review of the summary judgment, we conclude as a matter of law that the requisite unanimity for the adoption of the Second Amendment was achieved by the Trust’s subsequent confirmation of that amendment in its transfer of its ownership interest to its successor-in-title, Mr. Wilkinson (who is also the Dauphine Owners’ common predecessor-in-title) because as an express condition of that transfer Mr. Wilkinson’s ownership was “made, executed and accepted subject to” the publicly recorded Second Amendment. Accordingly, we affirm the lower court’s dismissal with prejudice of the Dauphine Owners’ lawsuit.
In the Parts which follow we explain our decision in greater detail. In Part I-A we consider the de novo standard of review applicable to summary judgments and in Part I-B we explain why we do not consider materials proffered as evidence in the trial court and which were the object of the Dauphine Owners’ motion to strike. In Part II we consider the legal and conventional requirements for transferring or re-designating Common Elements to Limited Common Elements in a condominium regime in Louisiana. In Part III we address why the Second Amendment is characterized as a relative nullity, not an absolute nullity, and why |4it was confirmed by subsequent action. In Part IV we specifically describe the property with particularity in order to comply with the directive of La. C.C.P. art. 1919.
I
In this Part we first address the standard we employ when considering a trial court’s ruling on summary judgment. We then resolve an incidental evidentiary issue which arose in this matter because the trial judge excluded certain materials from evidence offered by the Association in support of its motion for summary judgment; we also address the standard we employ when considering trial court rulings on evidentiary issues.
A
We review the granting of summary judgment under the de novo standard. Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, p. 5 (La.2/20/04), 866 So.2d 228, 232, n. 2; Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230. “An appellate court reviews a district court’s decision granting summary judgment de novo, using the same standard applied by the trial court in deciding the motion for summary judgment.” Lingoni v. Hibernia Nat’l Bank, 09-0737, p. 3 (La.App. 4 Cir. 3/3/10), 33 So.3d 372, 375. Because we review the summary judgment de novo, we look at the facts and evidence in the record before us, inspecting it without regard or deference to the judgment of the trial court or its reasons for judgment. While ajjtrial court’s reasoning for granting a summary judgment may well be informative, it is not determinative of the legal issues to be resolved by the appellate court.[6]
*935 B
Before we consider the merits of the Association’s motion for summary judgment, however, we must dispose of a preliminary evidentiary matter concerning whether certain materials proffered by the Association, the party which prevailed in the trial court, may be considered in our review of the summary judgment. See Brungardt v. Summit, 08-0577, p. 12 (La. App. 4 Cir. 4/8/09), 7 So.3d 879, 887. When the trial court refused to admit the materials offered, the Association properly proffered the materials. See La. C.C.P. art. 1636; La. C.E. art. 103 A(2).
Contending that three documents, which were proffered by the Association in the trial court, were not part of the record and therefore should not be reviewed by this court, the Dauphine Owners brought a motion in this court to strike portions of the Association’s brief. The three documents proffered are (1) a letter from Michael Sommers to Stephen Broussard, the attorney for the Trust and the Association, (2) an affidavit of Shaun Rafferty, Michael Sommers’ attorney who in 2001 drafted the Second Amendment defining the Board and dividing it into two ^separate subcommittees to manage the two buildings and establishing that the Esplanade Owners had the exclusive use of the patio and pool, and (3) an affidavit of Mr. Wilkinson.
In response to the motion to strike, the Association has argued only that its counsel proffered the materials, thereby preserving the record for our review of the correctness of the trial court’s exclusion of the materials from evidence; it has not, however, briefed us on what it contends is erroneous regarding the trial court’s ruling. A prevailing party who has properly preserved for our review the excluded evidence through a proffer is not required to appeal or answer the appeal or even seek supervisory review. See La. C.C.P. art. 2133 (providing that the prevailing party “may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.”). Preferably the prevailing party will call attention in its brief of the exclusion of the complained-of material and explicitly argue why the trial court erred in excluding the material; the prevailing party should not simply rely upon the excluded materials in its brief to support the judgment as if they had in fact been admitted into evidence.
But the three documents are in the record on appeal. See McLean v. Hunter, 495 So.2d 1298, 1305 (La.10/20/86) (“The very purpose of requiring a proffer is to preserve excluded testimony so that the testimony (whatever its nature) is available for appellate review.”). We review eviden-tiary issues, such as the exclusion from evidence of the proffers in the record below, under the abuse of 17discretion standard of review. See La. C.E. art. 103[7]; *936 Brandt v. Engle, 00-3416, p. 10 (La.6/29/01), 791 So.2d 614, 620.
The trial court deemed Mr. Som-mers’ letter inadmissible because it was not an affidavit, and was not otherwise certified or verified. This ruling is supported by our decisions in King’s Joint Venture v. Marino, 02-0847, p. 5 (LaApp. 4 Cir. 9/25/02), 827 So.2d 521, 524, and Frazier v. Green Steel Building, Inc., 409 So.2d 1290, 1292 (La.App. 4 Cir. 1/25/82). The trial court deemed the affidavits of Mr. Rafferty and Mr. Wilkinson inadmissible under the parol evidence rule. This ruling is supported by La. C.E. art. 602, La. C.C.P. art. 967, and Arkla, Inc. v. Maddox and May Bros. Casing Service, Inc., 624 So.2d 34, 36 (LaApp. 2 Cir. 9/22/93). Accordingly, we conclude that the trial court did not abuse its discretion in excluding the evidence.
The Dauphine Owners contend that the Association improperly referred to these proffered documents in its appeal brief, and that this court should strike portions of the Association’s appeal brief referring to them. The Dauphine Owners cite the first circuit’s holding in Boquet v. SWDI, LLC, 07-0738 (LaApp. 1 Cir. 6/6/08), 992 So.2d 1059. While that case indeed states “it was improper to refer to such evidence in their brief,” the depositions at issue were not proffered in the trial court, and the case is, of course, distinguishable on that account. Boquet, supra, 992 So.2d at 1062. But because the proffered materials are inadmissible, we will not consider them in support of the Association’s argument in this appeal.[8]
II
In this Part we consider the legal and conventional requirements for transferring or re-designating Common Elements to Limited Common Elements in a condominium regime in Louisiana. The Association argues that the re-classification of the pool and passageways from Common Elements to Limited Common Elements was not a change in ownership, but merely a change in use. We disagree.
The rules of contract interpretation apply to the interpretation of a condominium declaration. See Prytania Medical Complex Owners Ass’n v. Mary, 506 So.2d 566, 568 (LaApp. 4 Cir.1987). “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. Civ. Code art. 2046. In this matter, the Condominium Declaration provides the controlling provision for the ownership of the Common Elements:
Each Unit Owner shall be entitled to the percentage of ownership in the Common Elements allocated to the respective Unit owned by such Unit Owner, as set forth in the schedule attached hereto as Exhibit “E” and by this reference made a part hereof as though fully set forth herein. The aforesaid percentages of ownership interest has been computed and determined in accordance with the Act,' and shall remain constant unless hereafter changed by recorded Amendment to this Declaration consented to in writing by all Unit Owners. Said ownership interests in the Common Elements shall be undivided interests, and the Common Elements shall be owned by the Unit Owners in accordance with their ^respective percentage of ownership as set forth in Exhibit “E”. The *937 ownership of each Unit and of the Unit Owner’s corresponding percentage of ownership in the Common Elements shall not be separated.
(emphasis added)
In discussing “common elements,” Professor Yiannopolous has written that “[t]he owner of an individual unit has an undivided interest in the common elements, which is a right of co-ownership.” 2 A.N. Yian-nopoulos, Louisiana Civil Law Treatise, § 144, p. 335 (4th ed.2001). Because here, under the pre-amended Declaration, there is no dispute that the pool and passageways are included in the Common Elements, each condo unit owner has an undivided ownership interest in the pool and passageways. “Ownership of the same thing by two or more persons is ownership in indivisión.” La. Civil Code art. 797. See also La. Civil Code art. 480 (“Two or more persons may own the same thing in indivisión, each having an undivided share.”).
“The use and management of the thing held in indivisión is determined by agreement of all the co-owners.” La. Civil Code art. 801 (emphasis added). Moreover, we emphasize the following important provision of La. Civil Code art. 802:
Except as otherwise provided in Article 801, a co-owner is entitled to use the thing held in indivisión according to its destination, but he cannot prevent another co-owner from making such use of it. As against third persons, a co-owner has the right to use and enjoy the thing as if he were the sole owner.
A comparison of the Declaration’s provisions regarding Common Elements and Limited Common Elements leads us to the inescapable conclusion that the Second Amendment’s re-designating the pool and passageways from Common Elements to Limited Common Elements would prevent the Dauphine Owners, as |inco-owners in indivisión, from making use of the pool and passageways. The Declaration sets forth that “Common Elements”[9]
shall mean the portion of the condominium property not a part of the individual Units, and shall include, but shall not be limited to, the Land, foundations, hallways, stairways, entrances and exits, laundry room, storage areas, basement, roof, incinerator, pipes, ducts, electrical wiring and conduits (except pipes, ducts, electrical wiring and conduits situated entirely within a Unit and serving only said Unit), public utility lines, floors, ceilings and perimeter walls of Unit boundaries as shown on the Plat, structural components of the Building, outside walks and patios, landscaping, and all other portions of the Property except the individual Units. Structural components located within the boundaries of a Unit shall be part of the Common Elements.
That definition contrasts with Declaration’s definition for “Limited Common Elements” [10]:
those Common Elements serving exclusively a single Unit or Units, including specifically, but not by way of limitation, balconies, patios, terraces and such portions of the perimeter walls, floors, ceiling, doors, vestibules, windows, entryways, and all associated fixtures and structures therein as lie outside a Unit boundary, but designate other portions of the Common Elements as Limited Common Elements including, but not limited to, rubbish collection areas, and such heating, plumbing and electrical fixtures and all associated pipes, ducts *938 and wiring as may serve exclusively a single Unit or group of contiguous Units, (emphasis added)
Clearly a re-designation of any Common Elements to Limited Common Elements would deprive a co-owner in indivisión of the co-owner’s use of the re-designated Common Elements. But the attempt to accomplish the deprivation without the co-owner’s consent is prohibited.
|nWhen these legal precepts are applied, there can be no question that the Esplanade Owners cannot re-designate Common Elements such as the pool and the passageways as Limited Common Elements and thereby prevent the Dauphine Owners’ use of the pool and passageways unless the Dauphine Owners have agreed to the re-designation. This is specifically required by La. R.S. 9:1122.108 B, which provides in pertinent part:
the percentage of undivided interest of such unit owner in the common elements of the condominium as expressed in the condominium declaration shall be an inseparable component of the ownership of the unit and shall not be altered, without the consent of all the unit owners expressed in an amended condominium declaration duly filed for registry, (emphasis added)
We reject the Association’s argument that the less-than-unanimous consent of all unit owners is sufficient because the percentage of a unit owner’s undivided interest in the Common Elements was not altered although the Common Elements themselves were altered. Transferring the pool and passageways to the exclusive use of the Esplanade Owners would necessarily alter and diminish the undivided ownership interest of the excluded unit owners in them.
We thus conclude that the Declaration itself, our general law on co-ownership, and the particular law governing condominiums all require the unanimous consent of all owners in indivisión (that is all unit owners) in order to re-designate the pool and passageways as Limited Common Elements and exclude the Dauphine Owner’s from the use thereof.
Ill
In this Part we explain our conclusion that the requisite unanimity for the adoption of the Second Amendment was achieved and that the Dauphine Owners can be lawfully excluded from the use of the pool and passageways. We find that 112the Second Amendment to the Declaration is a relative nullity rather than an absolute nullity and, as a relative nullity, it was later confirmed.
La. Civil Code art. 2030 states:
A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed. Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.
We are certain that what the Second Amendment purports to accomplish (the alienation of an undivided interest in immovable property) does not violate “a rule of public order.” The object of the contract is surely not illicit or immoral. The Second Amendment is not an absolute nullity.
Thus we turn to La. Civil Code art. 2031, which states:
A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.
*939 Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative.
The Second Amendment is relatively null because it violates an important rule intended for the protection of a private party, which in this case is any co-owner whose consent was required in order to effect the alienation of his ownership interest. At the time of the adoption of the Second Amendment and its recordation that co-owner was the Trust. There can be no doubt, for example, that the Trust could have urged the nullity of the Second Amendment and caused its cancellation from the public records. See La. Civil Code art. 2033 (“An absolutely null 11scontract, or a relatively null contract that has been declared null by the court, is deemed never to have existed.”). But the Trust took no such action.
Because the Second Amendment is only relatively null, the Trust could confirm it.And the confirmation can occur either expressly or tacitly. La. Civil Code art. 1842 provides:
Confirmation is a declaration whereby a person cures the relative nullity of an obligation.
An express act of confirmation must contain or identify the substance of the obligation and evidence the intention to cure its relative nullity.
Tacit confirmation may result from voluntary performance of the obligation.
In Meaghan Frances Hardcastle Trust v. Fleur de Paris, Ltd., 04-1371, p. 4 (La. App. 4 Cir. 6/29/05), 917 So.2d 448, 450-51, in which a lease agreement was at issue but the parties paid and accepted monthly rent, we confirmed a relatively null contract. We stated:
Confirmation of a contract, as referred to in Article 2031 ... involves making the contract valid by formal assent. That assent can be evidenced through the typical actions signifying ratification of a defective contract ... While no clear definition exists in the statutes or case law as to what confirmation acts validate a relatively null contract, jurisprudence makes it clear that acts sufficient to ratify a contract will act as confirmation of the contract. Confirmation and ratification are used almost interchangeably, or as non-exclusive actions. When a contract is ratified through the subsequent actions of the parties, that contract is confirmed by that ratification, [citations omitted] ... [T]his Court agrees with the district court’s finding that “the subsequent actions of both the lessor and the lessee, that is, and its successors, ... The parties have ratified it by the acceptance of rent payments with regard to the lease.”
When the Trust sold its undivided interest in the Dauphine condo units to Mr. Wilkinson, it expressly recited that the sale was “made, executed and accepted subject to” the Second Amendment, which was already publicly recorded. By the “accepted subject to” condition of the sale, the Trust assented to the Second Amendment. That assent sufficed to constitute the requisite unanimous consent. The deficiency that had theretofore existed was overcome or supplied by the Trust’s assent to and confirmation of the Second Amendment. Consequently, Mr. Wilkinson, and all of his successors-in-title such as the Dauphine Owners, are bound by the confirmed Second Amendment.
We have previously addressed the binding effect of the express inclusion of “subject to” language in an act of sale. In Eastover Property Owner’s Association, Inc. v. Cochrane, we described a property owner’s obligation to pay dues and assessments to a property owners’ association *940 when “[t]he act of sale for this lot reflected that the sale was made and accepted subject to a number of conditions, which indicated that the purchasers accepted the purchase of the lot subject to the Eastover act of restriction....” Eastover Property Owner’s Ass’n., Inc. v. Cochrane, 02-1502, p. 2 (La.App. 4 Cir. 5/21/03), 848 So.2d 710, 711 (emphasis added).
The first circuit considered the consequences of express language of this sort in discussing a building restriction under which successive owners of the land bound by a particular building restriction agree to take subject to the obligation contained in the restriction. Leonard v. Lavigne, 153 So.2d 544, 548 (La.App. 1st Cir.1963). The court in Leonard stated:
Such language can only indicate intention that the obligation assumed would pass with the land to successive owners or transferees of the Thibodauxs. Clearly, therefore, all successive owners were bound thereby and took subject to the previously recorded restriction.... The restriction in question appears in defendant’s chain of title considering its inclusion in a previously recorded instrument executed by defendants’ immediate author in title. Under such circumstances | ^defendants purchased with constructive notice of the limitation and are bound thereby.
Leonard, supra, 153 So.2d at 548 (emphasis added).
We conclude that, as a matter of law, the Trust’s express stipulation that its sale to Mr. Wilkinson was “made, executed and accepted subject to” the Second Amendment constitutes the Trust’s confirmation of the Second Amendment — supplying the requisite unanimity of consent for this change. The effect of the Trust’s confirmation is retroactive to the date of the adoption of the Second Amendment, which date is July 31, 2002. See La. Civil Code art. 1844.
IV
The Second Amendment, as we earlier noted, was publicly recorded according to the requirements of the condominium law, which provides:
The condominium declaration and any instrument by which the condominium regime is altered or terminated shall be effective against third parties when filed for registry in the conveyance records in the parish in which the immovable property is located.
La. R.S. 9:1122.101. La. C.C.P. art. 1919 requires that all final judgments affecting title to immovable property must describe the immovable property with particularity. In this case, as the judgment affects title to the immovable property, we recognize the property’s particularized description as follows:
THAT CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, rights, ways and privileges thereunto belonging or in anywise appertaining, situated in the SECOND DISTRICT of the City of New Orleans, Parish of Orleans, State of Louisiana, in SQUARE NO. 81, thereof, bounded by ESPLANADE AVENUE, DAUPHINE STREET, BARRACKS STREET and BURGUNDY STREET, designated as LOT A-l, according to a survey by Guy J. Seghers, C.E. & S., dated March 23, 1954, redated June 19, 1958, revised October 10, 1962, a copy of which is annexed to an act passed | inbefore Edmond G. Mirarme, Notary Public, dated October 11, 1962, which said Lot A-l measures 64.3 feet (actual) (63 feet 11 inches 3 lines title) front on Esplanade Avenue, by a depth and front on Dauphine Street of 91.4 feet; with a first width in rear of *941 40 feet 6 inches 3 lines; thence a second depth of 30.8 feet on a line parallel with Dauphine Street to a point on the rear line and a second width of 23.7 feet; with a depth on the Burgundy Street side of 122 feet.
According to a survey by Gilbert, Kelly & Couturie, Inc., dated December 17, 1998, the said portion of ground is located in the same district, square, and is bounded by the same streets, has the same lot number and the same measurements as hereinabove set forth, except that said Lot A-l measures 64 feet 3 inches 4 lines front on Esplanade Avenue.
The improvements thereon bear the Municipal Number: 906 Esplanade Avenue and 1323 Dauphine Street, New Orleans, Louisiana 70116.
CONCLUSION
The Second Amendment to the Declaration of Condominium for Port Esplanade Condominium Association, which amendment is dated July 31, 2002, and recorded at Instrument number 241405 in the conveyance records of Orleans Parish, having been validly confirmed by The Meaghan Frances Hardcastle Trust, is binding and enforceable with respect to the immovable property described above.
DECREE
We affirm the judgment of the trial court in favor of the Port Esplanade Condominium Association and against Michael P. Cusimano, Chere M. Theriot, James K. Ozborn, S. James Wallace, Bruce E. Mo-hat, and Frederick E. Lutz, dismissing their suit with prejudice.
AFFIRMED.

. The street addresses are 1323 Dauphine Street and 906 Esplanade Avenue.

. The Dauphine Owners are Michael Cusima-no, Cheré M. Theriot, James K. Ozborn, S. James Wallace, Bruce E. Mohat, and Frederick E. Lutz.

. The Esplanade Owners who were sued are Peter J. Wanek; Michael S. Sommers and the Sommers Joint Revocable Trust, Unit B; Michael E. Williams, Unit C; Ulrike M. Lang, Unit D; Mary F. Berry, Unit E; Wesley M. Shrum, Jr.; Blaine M. McBurney, Unit G;. Kenneth D. Peters; Michael D. Robeson, Unit I; Henrietta L. Alves.

. The Esplanade Owners who signed consent to the Second Amendment are Sommers, Williams, Lang, Berry, McBurney, Robeson, and others who were not named defendants in this suit: Jose and Ciarai Gude, and Geoffrey A. and Margaret M. McGovern. The district court dismissed the plaintiffs’ claims against individual condominium owners of units in the Esplanade Avenue building on June 1, 2009. The court granted the plaintiffs thirty days to amend their petition to set forth a cause of action against the dismissed individuals; however, the plaintiffs did not file an amended petition.

. Additionally, the trial court denied the Esplanade Owners’ exception of no right of ac *934 tion in the judgment which is the subject of this appeal.

. We specially note that we have considered and denied the Dauphine Owners’ motion to strike the Association’s brief on the grounds that a new legal theory (confirmation of a relative nullity) was not addressed in the trial court and is first raised on appeal. The Dau-phine Owners rely upon Council of the City of New Orleans v. Washington, 09-1067, p. 3-4 (La.5/29/09), 9 So.3d 854, 856-857, which held that constitutional attacks must be specially pleaded in the trial court and may not be raised for the first time on appeal; there is no constitutional attack involved in this case. The Dauphine Owners also rely upon our plurality decision in McDaniel v. Charity Hospital and Medical Center of Louisiana at New Orleans, 08-0229 (La.App. 4 Cir. 8/13/08), 991 *935 So.2d 1138 (Tobias, J., concurring). We distinguish McDaniel because the new legal theories first raised on appeal by the non-prevailing party would have required further factual or evidentiary development, but in this case all the necessary evidence that bears on the issue is before us. Moreover, La. C.C.P. art. 2133 allows a prevailing party such as the Association to "assert, in support of the judgment, any argument supported by the record”. (emphasis added).

. La.Code of Evidence, Article 103 states, in pertinent part:
A. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ...
(2) When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.
B. The court may add any other or further statement which shows the character of the *936 evidence, the form in which it was offered, the objection made, and the ruling thereon.

. By separate order we have granted the motion to strike as it pertains to these evidentia-ry matters.

. 1. Definitions (e)

. 1. Definitions (j)