MAX N. TOBIAS, JR., Judge.
hThe plaintiff, Alvin Jones (“Jones”), appeals the trial court’s judgment that dismissed his lawsuit against the defendant, Buck Kreihs Marine Repair, L.L.C. (hereinafter, “BKM”) on the defendant’s motion for summary judgment. For the reasons that follow, we reverse the trial court’s judgment and remand this matter for further proceedings.
I.
We review the granting of a motion for summary judgment utilizing the de novo standard of review. Hutchinson v. Knights of Columbus, Council No. 5717, 03-1533, p. 5 n. 2 (La.2/20/04), 866 So.2d 228, 232; Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230. We utilize the same standard applied by the trial court in deciding the motion for summary judgment. Cusimano v. Port Esplanade Condominium Ass’n, Inc., 10-0477, p. 4 (La.App. 4 Cir. 1/12/11), 55 So.3d 931, 934; Lingoni v. Hibernia Nat’l Bank, 09-0737, p. 3 (La.App. 4 Cir. 3/3/10), 33 So.3d 372, 375. Because we review a motion for summary judgment de novo, we do not give deference to the trial ^court’s judgment or its reasons therefor. Cusimano, p. 4, 55 So.3d at 934. A trial court’s reasoning for granting a summary judgment may be informative, but it is not determinative of the issues to be resolved by this court. Cusimano, pp. 4-5, 55 So.3d at 935. If a genuine issue of material fact exists, then summary judgment is inappropriate. La. C.C.P. art. 966 B(2).
II.
Jones, an employee of U.S. United Bulk Terminal, L.L.C. (hereinafter, “UBT”), was severely injured, resulting in paralysis from the chest down, on 19 February 2010 at UBT’s vessel-loading and unloading facility in Davant, Louisiana. At the time of his injury, Jones was in the course and scope of his employment for UBT.
UBT employees had determined that the weight scales on one of its elevated conveyor systems required removal and replacement with new scales. UBT’s personnel contacted BKM, a company they had used before and with whom a related company had a contract,[1] requesting two mechanics to assist in the job.
*1184 In the mid-morning of 19 February 2010, BKM boilermaker Virgil Landry (“Landry”) and BKM machinist Shadrach Coleman (“Coleman”) were dispatched to the UBT facility. They met with UBT supervisor in charge of managing electrical and engineering projects at UBT’s Davant facility, Layne Bennett (“Bennett”), for about 20 minutes about the work to be performed, whereupon Landry and Coleman proceeded to the conveyor that was mounted on an aerial | aboom approximately 35 feet above the facility floor. Safety issues or concerns were not addressed during the meeting. Bennett, Landry, and Coleman ascended to the boom work site. Landry and Coleman carried their own tools to the weight scale system on the conveyor system. Bennett directed Landry and Coleman to start removing the bolts that secured the old scale and counterweights, but he did not direct them how to do so.
Shortly thereafter, the new replacement scales were delivered to the boom and mechanically lifted to Bennett on the overhead boom. The scales were packaged in eight separate boxes, each weighing about 25 pounds. At Bennett’s request, Landry assisted Bennett in unloading the first few boxes. Bennett, however, decided to unload the remaining boxes himself, simultaneously directing Landry to resume changing out the old scales.[2] As Landry and Coleman resumed working on the removal of the old scales, Bennett proceeded to unload the remaining boxes. Upon attempting to unload the final box, Bennett lost his grip on it. The box fell from the overhead boom, striking Jones, who was walking in an area under the boom that individuals regularly cross to go from one area of the UBT facility to another, on the head. No warning devices or tapes, safety cones, ropes or barricades, or other implements were in place to indicate the work overhead, and Jones was unaware of the overhead work.
|4On appeal, Jones assigns three errors which can be discussed and described as but one, to-wit, the trial court erred in granting BKM’s motion for summary judgment because genuine issues of material fact exist relating to whether BKM was negligent and whether such negligence caused or contributed to Jones’ injuries in view of the contractual duties that BKM’s on-site employees had relating to safety.
III.
OSHA regulations direct that the area beneath overhead work should be protected; the duty to protect falls upon both UBT and BKM. UBT’s duty is to its employees and BKM’s duty is to its employees. Regulation 1926.451(h) specifically places the burden upon an employer to secure heavy objects away from the surface’s edge to prevent their falling. Regulation 1926.501(c) places the burden upon the employer to barricade the area to which objects could fall. See Regulation 1926.501(c)(3). We do not find that this duty is delegable under the Regulations, but the duty may be contracted to another person. See generally Bujol v. Entergy Services, Inc., 03-0492, 03-0502 (La.5/15/04), 922 So.2d 1113.
IV.
In the record before us is a contract, “General Services Agreement” dated 3 February 2010 between U.S. United Ocean Services, L.L.C. (“USUOC”) and BKM. No evidence in the record before us establishes how UBT and USUOC are *? related. In oral argument before us, counsel represented that this agreement applied to this case. However, we find no stipulation or explanation as to why this | ¿agreement should be applied, especially because the contract states that USUOC is located in Tampa, Florida. The single provision relating to safety reads as follows:
SAFETY PRECAUTIONS. Contractor [BKM] agrees prior to the commencement of the work to make all necessary inspections and to ascertain the existence and extent of any actual or potential hazardous or dangerous or unsafe conditions, and to instruct its employees as to said conditions and as to the safety measures and precautions to be taken in connection therewith. Contractor further agrees to take all necessary safety precautions, to furnish and install all safeguards necessary for the prevention of accidents, and to otherwise fully comply with all laws, rules and regulations pertaining to safety and accident prevention. When so ordered by Representative [presumptively, UBT’s employee, Bennett], Contractor agrees to stop any part of the work that Representative deems unsafe until such time as corrective measures satisfactory to Representative have been taken by Contractor, and Contractor agrees to make no claim for damages arising out of such work stoppages. Contractor agrees that it will require its employees to abide by the provisions of Company’s “Contractor Safety Manual” policies regarding safe working practices. [Emphasis in original.]
Also appearing in the record of appeal is the “U.S. United Bulk Terminal Contractor Safety Manual” dated 3 March 2008 that applies to this case. Section IV of the manual signed by BKM’s president on 18 July 2008; therein BKM acknowledges receipt of the manual and agrees that BKM has the “expertise, experience and sole responsibility to safely perform the work exercising reasonable care.” But the manual is totally silent as to what “work” BKM is to perform. An examination of the manual discloses no provision that obligates BKM to provide direct safety to UBT personnel. Rather, the safety manual addresses primarily matters to protect BKM personnel from injury. The second page of the manual specifically states:
This handbook is provided to UBT contractors to inform them of the general safety and environmental [ ^requirements to be followed while working on UBT vessels or property. Although UBT expects its contractors to comply with these safety and environmental practices, UBT assumes no responsibility either expressed or implied for monitoring contractor’s personal safety or compli-ances with environmental regulations. These requirements are not meant to be a comprehensive list of safety or environmental requirements, nor are they meant to represent all applicable safety or environmental regulations of the United States Coast Guard, Occupational Safety and Health Administration, Environmental Protection Agency or any other applicable Federal, State or local agency.
However, Section 1, addressing “Contractor General Safety Rules” states in pertinent part (and obviously, in context, referring to BKM):
Remaining alert to potential safety and health hazards. Where possible eliminate all obvious hazards. Report all hazards and any corrective measures you have taken to Company Representative.
This language may reasonably be read to have required BKM’s employees to barricade the area beneath the overhead *1186 boom or placed other warnings such as would have prevented anyone being injured as the result of the dropping of anything on persons beneath them.
V.
We next look to the jurisprudence to ascertain whether any jurisprudential rule would assign duties to BKM and BKM on-site personnel to have barricaded the area beneath the overhead boom or placed other types of warnings in the area where the subject accident occurred.
Under a duty-risk analysis in a case involving La. C.C. arts. 2315 and 2316 negligence, a plaintiff must prove five elements: (1) that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) that the defendant’s conduct failed to conform to the appropriate standard (the breach 17element); (3) that the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Long v. State ex rel. Dept. of Transp. and Development, 04-0485, p. 21 (La.6/29/05), 916 So.2d 87, 101, citing Bonin v. Ferellgas, Inc., 03-3024 p. 5 (La.7/2/04), 877 So.2d 89, 94; Perkins v. Entergy Corp., 00-1372, 96-1387, 00-1440, p. 7 (La.3/23/01), 782 So.2d 606, 611; and Boykin v. Louisiana Transit Co., Inc., 96-1932, pp. 8-9 (La.3/4/98), 707 So.2d 1225, 1230.
Further, as explained by the Supreme Court in the seminal case of Roberts v. Benoit, 605 So.2d 1032 (La.1991), to meet the cause-in-fact element, a plaintiff must prove only that certain conduct was “a necessary antecedent of an accident; that is, but for the defendant’s conduct, the incident probably would not have occurred.” [Emphasis supplied.] State Farm Mut. Auto. Ins. Co. v. LeRouge, 07-0918, p. 18 (La.App. 4 Cir. 11/12/08), 995 So.2d 1262, 1275. The critical test in Louisiana is phrased in terms of the “ease of association” which “melds policy and foreseeability into one inquiry: Is the harm which befell the plaintiff easily associated with the type of conduct engaged in by the defendant?” Id. The essence of the legal cause inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the duty. Id., pp. 18, 995 So.2d at 1275-76. The analysis we employ in determining whether to impose liability under La. C.C. art. 2315 is the duty/risk analysis, which consists of the following inquiries:
(1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?
Is(2) Did the defendant owe a duty to the plaintiff?
(3) Was the duty breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
Mathieu v. Imperial Toy Corp., 94-0952, p. 4 (La.11/30/94), 646 So.2d 318, 321-22. The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide. Id., p. 4, 646 So.2d at 322.
Jones acknowledges that, absent a special relationship between the parties (here, UBT and BKM), Louisiana law imposes no affirmative duty upon a party to intervene in the unsafe acts of another, even if that intervention may prevent an accident from occurring, citing Herrington v. BP Products North America, Inc., 2003 WL 21362267 (E.D.La.6/10/03); Ainsworth v. Shell Offshore, Inc. 829 F.2d 548 (5 *? Cir.1987); Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); and Strickland v. Ambassador, Insurance Co., 422 So.2d 1207 (La.App. 1st Cir.1982). Further, Jones argues that it is well-settled in Louisiana that a party, such as BKM, can by contract assume a duty to provide for the safety of an individual or a group of individuals which, in the case at bar, would include the plaintiff herein. This assumed duty, he asserts, may include a duty to inspect a work area for safety violations, citing Bujol v. Entergy Services, Inc., 03-1621 (La.App. 1 Cir. 8/14/02), 833 So.2d 947, 971-72, rev’d, 03-0492, 03-0502 (La.5/15/04), adhered to on rehearing (La.1/19/06), and a duty to correct unsafe conditions, citing Bujol, 03-0492, 03-0502, 922 So.2d at 1131; Cooper v. Louisiana Dept. of Public Works, 03-1074 (La.App. 3 Cir. 3/3/04), 870 So.2d 315; Smith v. State through Dept. of Public Safety, 620 So.2d 1172, 1185 (La.App. 1st Cir.1992).
| ^Further, Jones argues BKM employees Landry and Coleman gave no consideration to their own handling of tools and equipment that could drop or fall from the boom that was suspended many feet in the air in an area under which individuals would regular pass. From their own safety standpoint and the standpoint of protecting themselves and BKM from a potential suit for damages if their tools or a part of the machinery upon which they were working fell, barricades and/or other warning would put Jones and others on notice of the overhead work in progress.
In this instance, work was being done at an overhead site beneath which individuals were passing. OSHA regulations assign a duty that we recognized in Gatlin v. Entergy Corp., 04-0034, 04-1368, pp. 5-6 (La.App. 4 Cir. 5/4/05), 904 So.2d 31, 35:
OSHA specifically provides that “Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct.” 29 U.S.C. § 654(b). As the United States Fifth Circuit Court of Appeals has explained:
OSHA requires that all employees, as well as employers, to comply with safety standards and regulations. But the Act only imposes criminal liability on employers for willfully violating such standards or regulations. While employees have a duty to follow OSHA regulations, Congress has chosen not to criminalize employee abdications of that responsibility.
United States v. Shear, 962 F.2d 488, 492 (5th Cir.1992).
In addition, not only are OSHA regulations applicable to employees, violations of OSHA regulations are relevant to establishing the negligence of a party. See Manchack v. Willamette Industries, Inc., 621 So.2d 649, 652 (La.App. 2 Cir. 1993). Louisiana law is clear that “[w]hile statutory violations are not in and of themselves Imdefinitive of civil liability, they may be guidelines for the court in determining standards of negligence by which civil liability is determined.” Smolinski v. Taulli, 276 So.2d 286, 289 (La.1973).
In sum, we find that but for the failure of BKM’s employees to barricade the area beneath the boom or provide any of a number of possible warnings, thereby protecting BKM and its employees from their own direct liability for dropping something from above onto passersby beneath the boom, Jones probably would not have suffered injury from Bennett’s negligence. We find that based upon the facts of this case a duty existed as a matter of law. This creates a genuine issue of material fact that precludes the granting of *1188 BKM’s present motion for summary judgment.
VI.
We conclude, therefore, that we are required to reverse the trial court’s judgment dismissing Jones’ claims against BKM because genuine issues of material fact exist precluding summary judgment. We remand this case to the trial court for further proceedings.
REVERSED; REMANDED.

. This matter is discussed in greater detail infra.

. We note Bennett asserts that no BKM employee assisted him with any of the boxes. However, whether a BKM employee assisted Bennett is not a material fact to a resolution of the issue before us.