**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3812-17T3

YAAKOV FISGUS and
ALLISON FISGUS,

     Plaintiffs-Appellants,

v.

KENNY AREY, JERSEY
CENTRAL POWER AND
LIGHT, FIRST ENERGY
CORP., and LAKEWOOD
TOWNSHIP,

     Defendants-Respondents,

and

ELCO GLASS COMPANY, ELI
and ZIPPORAH BAVARSKY,

     Defendants,

and

KENNY AREY and JERSEY
CENTRAL POWER AND LIGHT,

     Defendants/Third-Party
     Plaintiffs-Respondents,

v.

DION STOCKLING and IDEAL WAY
MOVERS, INC.,

     Third-Party Defendants.

_____

Argued February 27, 2019 - Decided June 18, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1746-15.

Leah Lederberger argued the cause for appellants (The Brown Law Firm, attorneys; Leah Lederberger, on the briefs).

Stephen A. Rudolph argued the cause for respondents Kenny Arey, Jersey Central Power and Light and First Energy Corp. (Rudolph & Kayal, PA, attorneys; Stephen A. Rudolph, on the brief).

Michael S. Nagurka argued the cause for respondent Lakewood Township (Gilmore & Monahan, attorneys; Michael S. Nagurka, on the brief).

PER CURIAM

In this negligence action, plaintiffs Yaakov and Allison Fisgus,[1] appeal

from an August 11, 2017 order granting defendants Lakewood Township's

_____

[1] Allison Fisgus is listed as a plaintiff in the complaint seeking per quod damages for loss of consortium, but her claims are not relevant to the disposition

(Lakewood) and Jersey Central Power and Light's (JCP&L), FirstEnergy Corp.'s, and Kenny Arey's (jointly "the JCP&L defendants") motions for summary judgment, and the court's October 27, 2017 order denying plaintiff's motion for reconsideration.[2]  We affirm.

I.

Because we consider the court's order granting summary judgment, we detail the undisputed facts before the motion court and consider those facts in the light most favorable to plaintiff, the party opposing the summary judgment motions filed by the JCP&L defendants and Lakewood.  See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

On October 28, 2013, Dion Stockling, an employee of Ideal Way Movers, Inc., in Lakewood, turned on the ignition of one of his employer's trucks.  The truck "jump[ed]" backwards, struck and broke a utility pole causing live

---

of this appeal.  Therefore, 'plaintiff,' as hereinafter used, shall refer exclusively to Yaakov Fisgus.

[2] Plaintiff's Notice of Appeal states that he also appeals from the court's June 9, 2017 order "denying [p]laintiff['s] motion seeking to preclude the introduction of the expert report" of the defense's expert witness.  However, because "neither [plaintiff's] brief filed on appeal nor the arguments presented referred in any way" to the court's June 9, 2017 order, we deem plaintiff's appeal from that order abandoned and, accordingly, dismiss it.  El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 155 n.2 (App. Div. 2005); see Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019).

electrical wires and transformers to fall onto adjacent trees and to the ground. Stockling heard "hissing" and saw sparks emanating from the downed wires and transformers.

Kenny Arey, a troubleshooter employed by JCP&L, responded to the scene. He observed numerous downed wires and that the wires caused several trees to catch fire. Arey knew from experience that the wires were energized by 7200 volts of electric current, and deemed the situation life-threatening. To cut power to the wires, Arey was required to turn off three overhead "taps," or hubs where "the main line comes through."

Arey drove a JCP&L truck equipped with a "bucket" attached to an extendable forty-foot boom that allowed access to the taps. Police and fire department personnel crowded the street abutting the utility pole and prevented Arey from parking his truck in the street in a manner permitting access to the taps. Arey drove his truck over a curb and onto a small, grassy area adjacent to the street to allow access to the taps with his truck's bucket extended. Arey had previously driven over curbs in emergency situations, and did not feel a bump or anything unusual when he drove over the curb.

A-3812-17T3

After parking the truck on the area adjacent to the road, Arey set up outriggers to stabilize the truck. He placed a safety cone on the ground near the truck and donned his safety gear.

Plaintiff, a volunteer firefighter in Lakewood, responded to the scene. Another volunteer firefighter, David Wolf, also responded. Plaintiff and Wolf approached the driver's side of the JCP&L truck to speak with Arey about whether he had cut the power to the downed wires. When they did not see Arey, they walked toward the street to approach the passenger side of the truck. Plaintiff and Wolf did not walk around the front of the truck for fear of the downed wires, and did not see any cones placed around the truck. As they walked around the rear of the truck, plaintiff stepped behind a storm drain's curb piece, the "ground just gave away," and his right leg fell straight down into the storm drain, twisting his left leg up behind him as if he were "doing a split." The void leading into the storm drain was not visible; it was covered with grass before plaintiff stepped in it. After plaintiff pulled himself out of the storm drain, Wolf saw "a broken piece of metal or cast iron" at the bottom of the drain.

Plaintiff did not suffer any broken bones, but experienced chronic lower back and leg pain as a result of the fall. Plaintiff had a "nerve stimulator"

A-3812-17T3

surgically implanted in his lower back to manage his pain, but it requires surgery every few years to replace its batteries.

Plaintiff filed a complaint against Lakewood and the JCP&L defendants alleging they negligently caused his injuries. In August 2015, the JCP&L defendants amended their answer to include a third-party complaint against Stockling and Ideal Way Movers, Inc. Following the completion of discovery, the court granted plaintiff's motion to amend his complaint to name Stockling and Ideal Way Movers, Inc., as defendants.[3]

Plaintiff relied on the report of Richard M. Balgowan, an expert municipal and highway engineer and former public works employee, to support his allegations. Balgowan opined that based on New Jersey Department of Transportation (NJDOT) specifications, the storm drain was a "Type B" drain composed of "a cast iron header/curb piece, a bicycle safe storm grate and also a back plate. The back plate is behind the header/curb piece and covered with dirt/grass." The back plate "has a minimum weight of 120 pounds, is 3/4 inches thick, is recessed into the storm drain frame . . . covered with [four] to [five] inches of soil," and sits atop the storm drain inlet.

---

[3] Plaintiff settled his claims against Stockling and Ideal Way Movers, Inc.

Balgowan concluded the storm drain's back plate dislodged and fell to the bottom of the storm drain, creating the void through which plaintiff fell. Balgowan stated he has "been involved with the construction and maintenance of roads for over [thirty-five] years," and has "never seen a storm drain[']s back plate get dislodged and fall to the bottom of a storm drain as occurred with this incident." Balgowan opined that the force of a truck driving over the back plate is insufficient to dislodge the back plate, and that for the back plate to have become dislodged, "the storm drain header/curb piece and/or back plate were not installed properly." Balgowan relied on the testimony of Anthony Arecchi, Lakewood's Director of Maintenance, that Lakewood retrofitted approximately 10,000 storm drains during the previous fifteen years, and opined that "[t]he most likely scenario is that the header/curb piece was not properly secured to the storm drains" by Lakewood, and "[w]hen the JCP&L truck made contact with the header/curb piece, it could have pushed it backwards and caused the back plate to shift and fall to the bottom of the storm drain."

Balgowan also opined that Arey's failure to "establish[] a work zone[] around the utility pole and the equipment being used to de-energize the electric lines" resulted in plaintiff approaching the area around the JCP&L truck and falling in the storm drain. Balgowan cited an Occupational Safety and Health

Administration (OSHA) regulation which states that employers working in an overhead capacity should "[b]arricade the area to which objects could fall, prohibit employees from entering the barricaded area, and keep objects that may fall far enough away from the edge of a higher level so that those objects would not go over the edge if they were accidentally displaced." 29 C.F.R. 1926.501(c)(3). Balgowan concluded Arey's failure to establish a work zone around his truck "was improper and a cause of [plaintiff's] incident."

Lakewood and the JCP&L defendants filed summary judgment motions. Plaintiff opposed the motions and filed a cross-motion for summary judgment against Lakewood and, if the court deemed it necessary, a motion for a Rule 104 hearing to address defendants' challenges to Balgowan's expert qualifications and opinion. After hearing argument on the motions, the court rendered a written decision finding Balgowan's conclusion that Lakewood improperly installed the storm drain's header/curb piece was "based on speculation and conjecture not facts," and was an inadmissible net opinion. The court also found that without Balgowan's expert opinion, there was "no competent evidence from which a jury could infer the actions or inactions of Lakewood . . . were a proximate cause or substantial factor of [p]laintiff's accident."

The court further found Arey did not have a duty to establish a work zone to prevent plaintiff from falling into the storm drain.[4] The court concluded that based on a consideration of New Jersey's "public interest that power companies and their employees be focused and act quickly and decisively in emergency circumstances," and the absence of any reasonable foreseeability of the risk of injury, it would be unfair to impose such a duty of care upon the JCP&L defendants in this case.

The court entered an order granting summary judgment to Lakewood and the JCP&L defendants and denying plaintiff's cross-motion. Plaintiff's subsequent reconsideration motion was denied. This appeal followed.

Plaintiff offers the following arguments for our consideration:

POINT I

THE TRIAL COURT ABUSED ITS DISCRETION WHEN RULING THAT PLAINTIFF'S EXPERT

---

[4] On appeal, plaintiff argues only that the court erred by not finding Arey had a duty to establish a work zone around his bucket truck in accordance with 29 C.F.R. 1926.501(c)(3). Plaintiff argued before the motion court that Arey was negligent by driving the truck over the curb, but does not reprise that contention on appeal. Because plaintiff does not argue the court erred by granting summary judgment on the claim that the JCP&L defendants are negligent because Arey drove his truck over the curb, the issue is deemed waived and we do not consider it. See Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (finding an issue not briefed on appeal is deemed waived); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019).

LIABILITY REPORT AS TO LAKEWOOD TOWNSHIP CONSTITUTES A NET OPINION.

A. Standard of Review

B. Mr. Balgowan explicitly sets forth the facts and data that support his opinion.

C. When discounting the NJDOT specifications that are critical to Mr. Balgowan's opinion, the Court did not understand that the parties are actually in agreement as to its accuracy.

D. The Court usurped the role of the jury when it believed Mr. Arrechi's testimony regarding Mr. Balgowan's understanding of the drain frame.

E. The Court substituted its judgment for that of the jury when it challenged Mr. Balgowan's analysis of the backplate's dislodgment.

F. If there is any doubt remaining as to the admissibility of Mr. Balgowan's report, then a hearing pursuant to Rule 104 is required.

POINT II

IN LIGHT OF PLAINTIFF'S INTRODUCTION OF AN ADMISSIBLE EXPERT REPORT, THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO LAKEWOOD TOWNSHIP.

POINT III

THE TRIAL COURT ERRED WHEN IT TEMPERED TRADITIONAL NEGLIGENCE PRINCIPLES TO RULE IN FAVOR OF JCP&L.

A. Pursuant to well-established and binding precedent, JCP&L's conduct must be evaluated by application of negligence principles.

B. The Trial Court misstates the public policy underlying the Good Samaritan Act when expanding on that non-existent policy to evaluate Plaintiff's claim.

C. The Trial Court's partial grant of immunity to power companies is vague, unfair and makes for bad precedent.

D. The Trial Court's conditional standard of care is actually a pretense to assume the jury's role as factfinder.

E. The Trial Court's partial reversion to immunity for power companies is a step backward in the evolving common law of torts.

POINT IV

THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO JCP&L, BECAUSE PLAINTIFF HAS MADE OUT A PRIMA-FACIE CASE FOR NEGLIGENCE.

II.

"When, as in this case, a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010)). "Appellate review of the trial court's decisions proceeds in the same

11

sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid.

A trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. Id. at 52. A trial court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). "Deference to a trial court's decision is not appropriate . . . if that decision was based upon a mistaken understanding of the applicable law." Terrell v. Schweitzer-Mauduit Int'l, Inc., 352 N.J. Super. 109, 115 (App. Div. 2002).

An "expert opinion must be grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is . . . the type of data normally relied upon by experts.'" Townsend, 221 N.J. at 53 (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)). The net opinion rule is a "corollary of [Rule 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Polzo, 196 N.J. at 583 (first alteration in original) (citation omitted).

Experts are required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Townsend, 221 N.J. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). Stated differently, experts must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Id. at 55 (citation omitted). "[A] trial court may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011). "A standard which is personal to the expert is equivalent to a net opinion." Ibid. (quoting Taylor v. DeLosso, 319 N.J. Super. 174, 180 (App. Div. 1999)).

Plaintiff argues the court abused its discretion by finding Balgowan's report constituted an inadmissible net opinion as against Lakewood. We are not persuaded.

Balgowan's report "fail[ed] to establish the existence of any standard about which" he would testify. Ibid. In conclusory fashion, he merely noted that he had "never seen a storm drain[']s back plate get dislodged and fall to the bottom of a storm drain as occurred" here, and opined that because "the back

13

plate is heavy and covered with soil," a truck driving over the header/curb piece "would not cause the back plate to dislodge." Balgowan performed no tests supporting his conclusion and his opinion is untethered to any standard establishing the reliability of his method for arriving his conclusion. See Townsend, 221 N.J. at 54 (citation omitted). An expert's conclusion is "excluded if it is based merely on unfounded speculation and unquantified possibilities," Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 300 (App. Div. 1990), and here Balgowan merely speculated that if Lakewood had not properly installed the header/curb piece, "[w]hen the JCP&L truck made contact with the header/curb piece, [the truck] could have pushed [the header/curb piece] backwards and caused the back plate to shift and fall to the bottom of the storm drain." See also Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996) (holding that where an expert speculates he "ceases to be an aid to the trier of fact and becomes nothing more than an additional juror"). We therefore find the trial court did not abuse its discretion in concluding Balgowan's report constituted an inadmissible net opinion as to Lakewood.

III.

We next address plaintiff's claim the court erred by granting the JCP&L defendants' and Lakewood's motions for summary judgment. Our review of an order granting a party's motion for summary judgment "is premised on the same standard that governs the motion judge's determination." RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). That is, we view the evidence in the light most favorable to the non-moving party to determine whether there exist genuine disputes of material fact. Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 256 (2018); see also Brill, 142 N.J. at 540.

For a plaintiff to recover against a public entity for injuries sustained due to the public entity's negligence, the plaintiff must prove "that at the time of the injury the public entity's property was in a dangerous condition, that the condition created a foreseeable risk of the kind of injury that occurred . . . that the condition proximately caused the injury," Garrison v. Township of Middletown, 154 N.J. 282, 286 (1998), and that either:

> (a) [A] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> (b) a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

15

[N.J.S.A. 59:4-2.]

Even if a plaintiff establishes these elements, the public entity will still be immune from liability if "the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." Garrison, 154 N.J. at 286 (quoting N.J.S.A. 59:4-2).

Plaintiff concedes that without Balgowan's putative expert testimony, there is no competent evidence establishing a "negligent or wrongful act or omission of an employee of" Lakewood, N.J.S.A. 59:4-2(a), and there is no evidence that Lakewood had actual or constructive notice of the hidden void into which plaintiff fell, N.J.S.A. 59:4-2(b). Accordingly, we affirm the court's order granting Lakewood summary judgment. See, e.g., Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 414 (2014) (holding that because the plaintiffs' expert's report "establishing the applicable standard of care and a breach of that standard" was an inadmissible net opinion, the plaintiffs "fail[ed] to satisfy the elements of their negligence claim," entitling defendants to a judgment as a matter of law).

Plaintiff next argues the court erred by finding he did not present sufficient evidence establishing a prima facie claim of negligence against the JCP&L defendants. "In New Jersey, as elsewhere, it is widely accepted that a

16

negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Jersey Cent. Power & Light, Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). Whether a defendant owes a duty of care to a plaintiff is "generally [a] question[] of law for the court to decide." Robinson v. Vivirito, 217 N.J. 199, 208 (2014).

In determining whether a defendant owes a duty of care, "courts must first consider the foreseeability of harm to a potential plaintiff, and then analyze whether accepted fairness and policy considerations support the imposition of a duty." Jerkins v. Anderson, 191 N.J. 285, 294 (2007) (citations omitted). "The foreseeability of harm is a significant consideration," Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572 (1996), and this inquiry "often subsumes many factors deemed relevant to the recognition of a duty," Robinson, 217 N.J. at 208. "Those factors include the relationship between the plaintiff and the alleged negligent party, the nature of the risk, and the ability to alter behavior to avoid injury to another." Ibid. "As it influences the recognition of a duty of care, foreseeability refers to 'the knowledge of the risk of injury to be apprehended[;] it is the risk reasonably within the range of apprehension[] of

injury to another person.'"  Id. at 208-09 (quoting Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 503 (1997)).

Plaintiff argues the JCP&L defendants owed a duty to establish a work zone restricting access to Arey's work area.  To support his claim, plaintiff relies on Balgowan's citation to an OSHA regulation that in pertinent part provides that "[w]hen an employee is exposed to falling objects, the employer shall," 29 C.F.R. 1926.501(c), "[b]arricade the area to which objects could fall, prohibit employees from entering the barricaded area, and keep objects that may fall far enough away from the edge of a higher level so that those objects would not go over the edge if they were accidentally displaced," 29 C.F.R. 1926.501(c)(3).

Even if the regulation governed Arey's actions, it does not establish a duty to protect against the unknown underground void into which plaintiff fell because it protects solely against risks presented by "falling objects," 29 C.F.R. 1926.501(c)(3).  See Jones v. Buck Kreihs Marine Repair, LLC, 122 So.3d 1181, 1184 (La. Ct. App. 2013) (finding 29 C.F.R. 1926.501(c)(3) "places the burden on the employer" to mitigate against the potential risk of objects falling on employees).  Thus, the cause of plaintiff's injuries is not the result of a "risk reasonably within the range of apprehension[] of injury to another person," Robinson, 217 N.J. at 208-09 (citation omitted), under the regulation.  In

18

addition, there is no evidence Arey had "knowledge of the risk of injury to be apprehended," id. at 208 (citation omitted), because, as plaintiff and Wolf explained in their depositions, the storm drain into which plaintiff fell was completely covered by grass that gave way only when plaintiff stepped on it. We therefore agree with the motion court that "accepted fairness and policy considerations [do not] support the imposition of a duty," Jerkins, 191 N.J. at 294, to prevent plaintiff's fall through what the evidence shows was a hazard unknown to the JCP&L defendants. See Vellucci v. Allstate Ins. Co., 431 N.J. Super. 39, 56 (App. Div. 2013) (holding that the owner of an office building had no duty of care to proactively test for the bacteria that causes Legionnaires' disease in the absence of a "statutory or regulatory scheme imposing a" specific duty upon building owners to proactively test for the bacteria because "the advent of the . . . bacteria in the building's water system" was unforeseeable).

We do not address the merits of plaintiff's claim that the court erred by grafting an immunity to ordinary negligence principles for employees of power companies responding to emergencies. Although the court opined that "emergency responders [should] be given leeway to make split second decisions and judgments in the face of imminent risk and danger to life and property" because "determination of the existence of a duty of care to avoid harm to

another is ultimately governed by fairness and public policy," <u>Robinson</u>, 217 N.J. at 208, it also found that "no [civil] immunity attaches to [the JCP&L defendants]." Moreover, we determine the validity of the court's order not its reasoning, <u>Do-Wop Corp. v. City of Rahway</u>, 168 N.J. 191, 199 (2001), and, as noted, affirm the court's order granting the JCP&L defendants' summary judgment because the record lacks any evidence showing they owed a duty to plaintiff to prevent his fall through the unknown void he claims caused his injuries.

We affirm the court's August 2017 order granting Lakewood's and the JCP&L defendants' motions for summary judgment and denying plaintiff's cross-motion for summary judgment. Plaintiff's claim the court erred by denying his motion for reconsideration, and his other arguments we have not expressly addressed, are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION