DREW, J.
It Geneveive and Mike Ladner appeal a judgment granting a motion for summary judgment and dismissing their personal injury claims.
We affirm.
FACTS
On October 18, 2005, James and Sarah Price, husband and wife, purchased two adjoining tracts located in Shreveport for $425,000. The larger tract, covering 4.263 acres, was bordered by Pines Road to the west and Jefferson Paige Road to the north. The smaller tract, covering 2.42 acres, was to the south of the larger tract along Pines Road. An abandoned barbeque restaurant was located on the larger tract at the corner of Pines and Jefferson Paige Roads. A small pond was located behind the restaurant.
Mike Ladner and his wife, Geneveive Ladner, lived on property adjacent to the east border of the Prices’ property. They had moved onto the property in 2005. The Ladners also operated a business there.
After midnight on March 15, 2007, Gene-veive Ladner went onto the Prices’ property to look at a car that had been driven into the pond located on the property. She was accompanied by her German Shepherd which weighed 120 pounds. When Geneveive Ladner attempted to tie the dog’s leash to a metal pipe sticking out of the ground on the Prices’ land, the dog struggled and apparently caused part of the pipe to fall and hit Geneveive Ladner’s right hand.
The Ladners filed suit against Trinity Group, Ltd., then later added the Prices as defendants.[1] They alleged that the pipe was actually a rusty |2water pump that sat atop a dilapidated water well. They further alleged that Geneveive Ladner had sustained severe injuries to her right hand requiring numerous surgeries and leading to loss of use of that hand.
The Prices filed a motion for summary judgment in which they contended that the Ladners had no evidence that there was any defect in the pipe or in the alleged pump or water well that allegedly injured Geneveive Ladner, and, if such defect existed, that it presented an unreasonable risk of harm to her. They further contended that the Ladners could not prove the Prices had actual or constructive knowledge of any defect in the pipe or alleged pump or water well. In support of their motion, the Prices submitted their own affidavits and excerpts from the Lad-ners’ depositions.
*1199 The Ladners opposed the motion with James Prices’ deposition and an affidavit[2] from their expert, Robert Borison. Bori-son stated in his affidavit that he is president of Total Safety Services, which investigates accidents and performs safety consultations. He added that he has over 40 years of experience in the fields of safety management, safety regulations and standards, and accident investigation, with an emphasis on applications and operations involving pipes, pumps, wellhead structures, and access control. Borison opined that the direct cause of the accident was the Prices’ failure to abate the unreasonably dangerous condition presented by the metal structure or artifact that struck Geneveive Ladner. He stated that [ ¡¡regardless of whether the structure or artifact was actually part of a water well hand pump, it was dangerous because it was unstable and subject to falling on a person and causing injury. He concluded that the structure or artifact served no identifiable useful purpose at the time of the accident, and it should have been removed, enclosed in a barricade or structure, or, at the very least, had its condition made more apparent through the use of signs warning of its location and potential danger.
The trial court granted the motion for summary judgment after determining there was no genuine issue of material fact that the Prices had actual or constructive knowledge of a defect on their property.
DISCUSSION
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 07-1726 (La.2/26/08), 977 So.2d 880. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; ie., whether there is any genuine issue of material 'fact, and whether the movant is entitled to judgment as a matter of law. Id.
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
I/The burden of proof on a motion for summary judgment is set forth' in La. C.C.P. art. 966(C)(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim-, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
*1200 This provision initially places the burden of producing evidence at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Samaha v. Rau, supra; Wright v. Louisiana Power & Light, 06-1181 (La.3/9/07), 951 So.2d 1058. At that point, the party who bears the burden of persuasion at trial, usually the plaintiff, must come forth with evidence (affidavits or discovery responses) which demonstrates that he or she will be able to meet the burden at trial. Samaha v. Rau, supra; Wright v. Louisiana Power & Light, supra.
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 00-2507 (La.12/8/00), 775 So.2d 1049.
Is An individual is responsible for the damage caused by things in his custody. La. C.C. art. 2317. The owner or custodian of a thing is answerable for damage caused by its defect only upon a showing that he knew or, in the exercise of reasonable care, should have known of the defect which caused the damage, that the damage could have been prevented by the use of reasonable care, and that he failed to exercise such care. La. C.C. art. 2317.1. Thus, to recover for damages caused by a defective thing, the plaintiff must prove that the thing was in the defendant’s custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage and that the defendant knew or should have known of the defect. Pamplin v. Bossier Parish Community College, 38,533 (La.App.2d Cir.7/14/04), 878 So.2d 889, writ denied, 04-2310 (La.1/14/05), 889 So.2d 266.
James Price thought that Geneveive Ladner’s accident occurred on the larger tract. He described the pond where the car was located as being behind the restaurant.
According to James Price, the larger tract was mostly enclosed by fencing. He stated that an old barbed-wire fence separated the larger tract from the smaller tract to the south.[3] He did not know the condition of the barbed-wire fence when he bought the property. James Price explained there was a chain link fence on the larger tract along its borders with Pines Road and Jefferson Paige Road. There was a gate on the Jefferson Paige Road border located approximately halfway between the northern corners ofj^the larger tract. A board fence began on the northeast corner of the larger tract and extended south, but James Price was uncertain exactly how much of the eastern border was fenced.
Mike Ladner testified in his deposition that the fence along Jefferson Paige Road was very old and torn down in spots. He also testified that a tree line and an old board fence with missing sections separated his property from the Prices’ property.
The Prices had limited contact with their property, which they purchased as a commercial real estate investment about 18 months prior to the accident. Their goal was to resell the property. James Price was originally interested in purchasing only the larger tract, but while visiting it with the realtor, he became interested in *1201 the smaller tract because there was standing timber on it.[4]
James Price recalled that he and the realtor parked them vehicles near the barbeque restaurant. The realtor wanted to point out the property’s boundaries, so he and James Price walked along the fence on the north side from the northwest corner to the gate on Jefferson Paige Road. They also walked along the fence on the Pines Road side. They did not walk the entire fence line, go inside the gate or fence, or walk around the property. James Price was able to look across the larger tract because there was no timber to obstruct his vision. The Prices did not have a survey performed before them purchase, nor did they have anyone inspect the property. Sarah Price never visited the property prior to the purchase.
|7The Prices wanted to make the property more marketable, so they hired Rodney Ketchum to demolish the barbeque restaurant, fill in the pond, and level the dirt on the property. Those were the only changes that the Prices made to the property.
James Price met Ketchum at the property to show him what needed to be done. They did not walk around the property, but remained in an area near the restaurant- and pond. The work began a couple of weeks later. James Price thought the work was started in March of 2007, but he was unsure if it began before or after the accident. He did recall seeing that a car had been pushed halfway into the pond when he went to the property to meet Ketchum.[5] Mike Ladner thought the restaurant had been demolished before his wife was injured. Geneveive Ladner first noticed that the land was being cleared after she was discharged from the hospital following treatment for injuries sustained in the accident.
James Price visited the property at least five times to check on the progress of Ketchum’s work. James Price thought his wife accompanied him on a couple of these visits. After Ketchum’s work was' completed, the property was placed on the market, which James Price thought occurred in May of 2007. James Price drove past the property once or twice to see if his “for sale” signs remained up, but he did not visit the property.
James Price testified in his affidavit that he had walked along the edges of the property, not the entire tract. Sarah Price stated in her affidavit [sthat she rarely visited the property after the purchase and usually stayed in her vehicle. She also stated that she never walked around the property.
The Ladners occasionally trespassed on the Prices’ property. James Price thought there was a “no trespassing” sign on the Pines Road fence and two such signs on the Jefferson Paige Road fence. Mike Ladner did not recall seeing any “no trespassing” signs on the fences before the accident.
Geneveive Ladner recalled walking around the property a couple of times before the accident. Mike Ladner estimated that he had ridden his four wheeler on the property about 8-10 times, and possibly more often. He normally entered the property near the far eastern corner. He recalled that others regularly raced various recreational vehicles such as dirt bikes and four wheelers on the Prices’ property. Mike Ladner guessed that he *1202 had last been on the Prices’ property about a month or two before his wife’s accident. James Price did not know that recreational vehicles were being driven on his property.
Although the accident occurred at night, Geneveive Ladner did not think it was very dark at the time because there was light from a nearby Brookshire’s grocery store and Pines Road illuminating the area.
Geneveive Ladner recalled that the pipe looked like it had a spout atop it. She was about to put the dog’s leash over the spout and tie it around the pole when her dog resisted and caused the spout to fall by either bumping or pulling the leash against a brace on the pipe. That was her only explanation for what caused it to fall. Ge-neveive Ladner thought the pipe was rusted because she found rust on her hand after the accident.
1 nThere is no evidence that the Prices had actual knowledge of the alleged defect on their property. James Price stated in his affidavit that: (i) he had no knowledge of any water wells or water pipes protruding from the ground on the property prior to or on March 15, 2007; (ii) he had no knowledge prior to or on March 15, 2007, of a water well on the property; and (iii) he had no knowledge either prior to or after March 15, 2007, of any rusted brace or defective well or pump anywhere on the property. Sarah essentially stated likewise regarding her knowledge in her affidavit. Ketchum never mentioned to the Prices that he had seen a well on their property.
The Ladners contend that the Prices had constructive notice of the defect, and cannot use their failure to inspect the property as a means to escape liability. The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant’s garde. Johnson v. Entergy Corp., 36,323 (La.App.2d Cir.9/20/02), 827 So.2d 1234.
The alleged defect was not apparent. Mike Ladner thought he had seen the pipe before, but had believed it was a fence post. Geneveive Ladner had never noticed the pipe on her previous walks. She did not even think the pipe was part of a well until her husband later told her. She thought it was merely a pipe or pole sticking out of the ground. She did not recall seeing anything like a concrete base around the lower portion of the pipe.
|10Based upon the foregoing, we conclude that there is no genuine issue of material fact regarding whether the Prices had actual or constructive knowledge of the alleged defect on their property. The trial court correctly granted the Prices’ motion for summary judgment.
DECREE
At the Ladners’ cost, the judgment is AFFIRMED.

. The Prices are apparently shareholders and officers of Trinity Group, Ltd.

. Borison’s report, which was referenced in his affidavit, was attached to the affidavit. Borison stated in his report that the direct cause of the accident was the failure of the Prices to abate the unsafe nuisance of an abandoned water well hand pump on their property. He additionally stated that the presence of nuisances on the property such as the abandoned restaurant, overgrown vegetation, and the pond should have alerted the Prices to inspect the property for other nuisances.

. The smaller tract had no other fences.

. The timber was sold before he purchased the tract, and it was cut shortly after he bought the tract.

. The car wás about 20-30 yards from the fence along Pines Road, so it could be seen ■from outside the fence.