JAMES F. McKAY III, Chief Judge.
liln this Hurricane Katrina property damage case, the plaintiff, Michael Bush, appeals the trial court’s granting of summary judgment in favor of the defendants, Bud’s Boat Rental, L.L.C. and The American Steamship Owners Mutual Protection <& Indemnity Association, Inc. We reverse and remand.
FACTS AND PROCEDURAL HISTORY
On August 29, 2005, in anticipation of Hurricane Katrina, the M/V DIXIE GEM, a pleasure yacht more than sixty feet in length, was moored in the middle of Venice Marina in Plaquemines Parish.[1] During *1191 the storm, the water at Venice rose quickly. This caused the M/V DIXIE GEM to drift and drag around its anchor at the end of a long chain. Thereupon, the chain looped over the deck of a stationary houseboat elevated on large concrete pilings. As a result, the houseboat suffered extensive damage.
On July 21, 2006, the houseboat’s owner, Michael Bush, filed suit against Bud’s Boat Rental, L.L.C., the owner of the M/V DIXIE GEM. In response, Bud’s Boat Rental moved for summary judgment, urging an affirmative “Act of God” | ¡.defense. On September 6, 2007, the trial court continued the motion without date. On March 25, 2010, the plaintiff amended his petition to add Bud’s Boat Rental’s insurer, The American Steamship Mutual Protection & Indemnity Association, Inc., as an additional defendant.
On February 22, 2013, the defendants reset the summary judgment motion for hearing. In support of their motion for summary judgment, the defendants submitted the affidavits of Gary Sercovich, the owner of Bud’s Boat Rental, and Robert Spears, a marine surveyor. In opposition to the motion for summary judgment, the plaintiff presented the affidavits of Captain James “Gene” Williams and Perry Beebe, a marine surveyor. Capt. Williams was a tugboat captain who stayed aboard a tugboat moored at the Venice Marina during Hurricane Katrina and an eyewitness to the events giving rise to this case. The motion came before the trial court for hearing on April 1, 2013. That same day, the trial court granted summary judgment in favor of the defendants. It is from this judgment that Mr. Bush now appeals. DISCUSSION
On appeal, Mr. Bush raises the following specifications of error: 1) summary judgment should not have been granted in light of the material facts relating to the defendants’ “Act of God” affirmative defense; and 2) the effects of Hurricane Katrina do not warrant the application of the “Act of God” defense on summary judgment when the underlying facts implicate human error or negligence as a cause or contributing cause to the plaintiff/appellant’s loss.
|3In essence, the only issue before this Court is whether summary judgment was properly granted. Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480, p. 3 (La.4/11/94), 634 So.2d 1180, 1183. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). If the court finds that a genuine issue of material fact exists, then summary judgment must be rejected. Oakley v. Thebault, 96-0937, p. 3 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. The burden of proof does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, if the party opposing the motion “fails to produce factual support sufficient to establish that he will be able to satisfy his evidentia-ry burden of proof at trial, there is no genuine issue of material fact.” La. C.C.P. art. 966(C)(2). Summary judgment should then be granted. Lomax v. Ernest Morial Convention Center, 2007-0092, p. 3 (La. App. 4 Cir. 7/11/07), 963 So.2d 463, 465.
In the instant case, the defendants argue an affirmative “Act of God/force majeure” defense because of Hurricane Katrina. This defense, however, is not absolute. The defense does not apply if *1192 human fault is involved in causing the loss. Saden v. Kirby, 94-0854, p. 8 (La.9/5/95), 660 So.2d 423, 428. It has been l4held that a party may be held liable for damages that would not have occurred, but for his own conduct or omission, when combined or concurrent with a “force majeure” or “Act of God.” Terre Aux Boeufs Land Co., Inc. v. J.R. Gray Barge Co., 2000-2754 (La.App. 4 Cir. 11/14/01), 803 So.2d 86.
As Hurricane Katrina threatened landfall, Bud’s Boat Rental moved many of its boats out of the Venice Marina area to a safe harbor upriver. However, as to the M/V DIXIE GEM, Bud’s decided to moor it in the middle of the marina, in the most open area of the harbor to allow the vessel to pivot on its anchor during the storm. In its motion for summary judgment, Bud’s contends that this was reasonable and that no precautions could have prevented the harm and devastation caused by Hurricane Katrina.
In opposition to the defendants’ motion for summary judgment, the plaintiff introduced the affidavit of Capt. Williams, an eyewitness to the chain of events giving rise to this lawsuit. According to Capt. Williams’s affidavit, the M/V DIXIE GEM appeared to be moored with a Danforth anchor in the 40 pound class. However, as the waters at Venice rose, the vessel floated free and snagged Mr. Bush’s house boat with its anchor’s chain. According to Capt. Williams, this type of anchor consists of two triangular prongs on a pivoting frame. The vessel is held in place by pulling against the anchor, which tension drives the anchor’s two prongs into the water bottom in the general direction of the vessel. To remove a Danforth anchor from its fixed location on the water bottom, a vessel normally pulls the anchor in the opposite direction. The plaintiffs other affiant, certified [ .¡marine surveyor Perry Beebe, opined that this type of anchor should not be used where a vessel may pivot because the anchor will release as the vessel pivots around; he opined that the best course of action would have been to move the vessel out of the Venice Marina, but in the alternative no fewer than three anchors should have been used to moor a vessel the size of the M/V DIXIE GEM.
Summary judgment was not appropriate in this case. Mr. Bush was able to show that genuine issues of material fact existed as to whether the M/V DIXIE GEM was properly moored or should have been moved upriver.
CONCLUSION
For the above and foregoing reasons, the trial court’s judgment granting summary judgment in favor of the defendants is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. The eye of the storm passed approximately twenty miles north of where the vessel was moored.