**Gail ENCALADE**

v.

**A.H.G. SOLUTIONS, LLC, Amber Hess (Member) ABC Insurance**

NO. 2016–CA–0357

Court of Appeal of Louisiana, Fourth Circuit.

NOVEMBER 16, 2016

C. A. "Chip" Fleming, III, 2118 N. Causeway Blvd., Metairie, LA 70001, COUNSEL FOR PLAINTIFF/APPELLANT

Scott S. Dittmann, 3850 N. Causeway Blvd., Suite 220, Metairie, LA 70002, COUNSEL FOR DEFENDANT/APPELLEE

(Court composed of Judge Terri F. Love, Judge Roland L. Belsome, Judge Joy Cossich Lobrano)

Judge Terri F. Love

Gail and Adam Encalade ("Plaintiffs") appeal the trial court's judgment granting summary judgment in favor of A.H.G. Solutions, LLC, Amber Hess, and America First Insurance Company (collectively "Defendants"). On *de novo* review, we find there is no evidence to establish that Defendants knew or should have known of any alleged defect of the restroom door's closing mechanism which Plaintiffs claim caused the injuries Mrs. Encalade sustained when she fell exiting the women's restroom. Also, Plaintiffs' expert report is insufficient proof as its theory of causation is based in conjecture and speculation. As a result, Plaintiffs are unable to establish the necessary elements of La. C.C. art. 2317.1 in order to prove that Defendants failure to inspect and maintain the restroom door in a reasonably safe condition was the cause of Mrs. Encalade's injuries. Accordingly, we affirm the trial court's judgment granting Defendants' summary judgment motion and dismissing Plaintiffs' petition for damages with prejudice.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Mrs. Encalade alleges that in May 2011 she went to see her insurance agent in order to pay her insurance premium. Her agent's office is located in the office building owned by Defendants at 3201 General DeGaulle. Before leaving the building, she visited the ladies' restroom located on the first floor. To enter the restroom, Mrs. Encalade pushed the restroom door open without issue. There is no evidence that anyone came into or left out of the restroom from the time that Mrs. Encalade entered to the time she exited the restroom. To exit, she pulled the restroom door open. Mrs. Encalade contends that when she exited the restroom the door quickly closed behind her, hitting her in the back with enough force that it caused her to fall forward sustaining injuries to her face and her shoulder. The injuries she sustained to her shoulder required surgery and subsequent physical therapy.

In April 2012, Mrs. Encalade filed a petition for damages [1], alleging that Defendants failed to maintain safe and hazard-free public areas in the building; failed to maintain properly functioning equipment including doors; and failed to prevent Mrs. Encalade's accident by identification of problems with the doorways and the door equipment and hardware. Thereafter, Defendants filed an answer to the petition and filed a motion for summary judgment.

In their motion for summary judgment, Defendants allege that Plaintiffs cannot satisfy their evidentiary burden of proof that: (1) Defendants knew or, in the exercise of reasonable care, should have known of any alleged defect which caused the alleged damage; (2) Mrs. Encalade's accident could have been prevented by the exercise of reasonable care; (3) Defendants failed to exercise reasonable care; and (4) the restroom door was maintained in an unreasonably dangerous condition.

Defendants aver that there is no evidence of any problems with the restroom door before Mrs. Encalade's accident. Defendants point to the testimony of Mrs. Encalade, her daughter Nicole Coleman ("Ms. Coleman"), the building's property manager and staff engineer Barrett Burkart ("Mr. Burkart"), Defendant Amber Hess ("Ms. Hess"), and independent witness Jeannine Talzac's ("Ms. Talzac") affidavit.

Mrs. Encalade testified that her insurance was due every six months, and she would visit her agent at Defendants' building at least every six months to pay her insurance premium. She testified: (1) that she never had issues with the restroom door before her accident; (2) that she was not aware of anyone reporting any problems with the door before her accident; and (3) that no one told her there were any problems with the door before her accident. She also testified that she had no knowledge or information of whether the building's maintenance department knew about any problems with the door before her accident. Mrs. Encalade's daughter Ms. Coleman testified similarly.

Ms. Talzac, an independent witness who worked at the building location on and before Mrs. Encalade's accident, stated that she used the same restroom daily or almost daily and that she never experienced any problem with the restroom door or was aware of any defects or mechanical issues with the restroom door. She also was not aware of any maintenance work done or that needed to be done on the

---

1. Mrs. Encalade later filed an amended and supplemental petition to add Adam Encalade, Mrs. Encalade's husband, as a plaintiff and to substitute America First Insurance Company for ABC Insurance.

door. Similarly, she was not aware of anyone other than Mrs. Encalade complaining about the restroom door's alleged defect. Defendants allege that the only purported problem with the door is Mrs. Encalade's present allegation that the door's retention mechanism, which prevents the door from closing too quickly, failed as she exited the restroom, causing the door to strike her in the back which caused her to fall.

Additionally, Mr. Burkart, the property manager and staff engineer, testified that he was responsible for fielding calls for repairs and other problems associated with the building. He stated that there were no records of any complaints or issues with the restroom door, nor was he aware of any problems with the door. He also testified that no one contacted him regarding any problems with the restroom door or made any complaints to him or his assistants, "except for possible verbal comments that [the door] may close too slowly due to women's bathroom privacy issues." He stated that the company which employed him as the building's property manager never worked on the subject door, and the only work done to the restroom was work to the restroom's interior.

Ms. Hess, the sole member and owner of A.H.G. Solutions, LLC, also testified that she was unaware of any complaints made about any problems or issues with the door. She stated: "I have been in and out of the door many times with my children. I have two small children right now ... and I have never had a problem with that door." Based on the foregoing evidence, Defendants contend that there is no evidence that Defendants knew or, in the exercise of reasonable care, should have known of any alleged defect which caused the alleged damage; that this accident could have been prevented by exercise of reasonable care; and that Defendants failed to exercise such reasonable care.

In response, Plaintiffs filed their opposition to Defendants' motion for summary judgment. Plaintiffs contend that Defendants failed to exercise reasonable care to inspect and discover the defective door closing mechanism; Defendants failed to exercise reasonable care to prevent the accident; and the door was in an unreasonably dangerous condition at the time of the accident and violated federal safety requirements.

Plaintiffs do not dispute the fact that there are no records that an inspection of the restroom door ever took place. Defendant property owner and manager Ryan Hess ("Mr. Hess") testified that he was not aware of any inspection of the door ever taking place before the accident. Mr. Hess also stated that since May 2011 he was not aware of any inspection except his single inspection immediately after Mrs. Encalade's accident. He testified that he inspected the restroom door and found that it was working "fine." Mr. Hess also testified that he has adjusted and installed similar closing mechanisms in the past, and in his opinion they do not require adjustment unless they are tampered with.

In addition, Plaintiffs submitted their expert's report and findings in opposition to Defendants' motion. Don Sanford ("Mr. Sanford") opined that because the "door closer is one of the most highly used pieces of equipment in any building ... normal wear ... requires proper and periodic inspection, maintenance, and adjustment." Mr. Sanford stated that in his opinion the door closing mechanism should be inspected and adjusted "at least annually;" however, in his experience, such inspections are "rarely, if ever," performed. In light of Mr. Hess' testimony and maintenance records showing no inspection or adjustment took place prior to Mrs. Encalade's accident or in the years following the accident, Mr. Sanford concluded that Defendants

failed to exercise reasonable care to inspect and discover the defective closing mechanism.

Further, Plaintiffs allege that Mrs. Encalade's accident was foreseeable given Defendants' negligent failure to inspect the restroom door. Plaintiffs point to Mr. Hess' testimony that "he himself experienced the danger of an abnormally fast closing door and that 'it could be a concern.'" Plaintiffs contend that had Defendants exercised reasonable care to inspect the restroom door, the risk of danger from the door's defective condition would have been avoided. Mr. Sanford stated that in his expert opinion "more probably than not the ladies' bathroom door was closing too quickly at the time of Ms. [sic] Encalade's accident; if such an inspection had taken place, more likely than not the dangerously fast closing (swing) speed would have been discovered and adjustments made to correct it," and Mrs. Encalade's injury would not have occurred.

Based on the testimony of Mrs. Encalade, Ms. Coleman, and Mr. Hess, Plaintiffs' expert concluded the swing speed of the restroom door was not in compliance with the Americans with Disability Act Standards for Accessible Design. Mr. Sanford determined that at the time of installation the ladies' and men's restroom doors "more likely than not all had approximately the same closing (swing) speed." However, at the time of Mr. Sanford's inspection, he found the doors had different closing swing speeds. Despite Mr. Hess' testimony that to his knowledge the doors have never been adjusted, Mr. Sanford found the ladies restroom doors closed in six to seven seconds and the men's restroom doors closed in four seconds or less. Mr. Sanford stated that according to federal standards the closing swing speed should not be faster than five seconds.

Moreover, Mrs. Encalade testified that the door struck her from behind. Noting that he is much larger than Mrs. Encalade, Mr. Sanford stated that he had "almost been knocked down by a few doors with similar door closer mechanisms ... that were out of adjustment." Similarly, Ms. Coleman testified that on the date of the accident she checked the restroom door. She observed that it closed very quickly, and though it did not knock her down, the restroom door "even struck her." Ms. Coleman testified that she returned to the building a couple days later to inspect the door again and noticed that the door closed slower than before and in approximately five seconds. Mr. Sanford opined that this testimony "supports a post-accident adjustment of the door closer to correct the improper closing (swing) speed."

Mr. Sanford also pointed to Mr. Hess' testimony that he had personally adjusted similar doors in the past and that it was not difficult to learn how. Mr. Sanford went on to state that "I would not be surprised if [Mr. Hess] made adjustments to these doors or directed that they be made. Perhaps he does not recall he did so." Summarizing his findings, Mr. Sanford concluded that "the most likely explanation for the difference in closing (swing) speed is that the ladies' doors [were] adjusted to be compliant with the ADA requirements and the men's doors [were] not." He opined:

> ... more probably than not the ladies bathroom door was closing too quickly at the time of Ms. [sic] Encalade's accident; if such an inspection had taken place, more likely than not the dangerously fast closing (swing) speed would have been discovered and adjustments made to correct it, and the injury caused to Ms. Encalade ... would have never occurred; and, the ... ladies' bathroom

doors were probably adjusted after the accident to comply with ADA standards.

In January 2016, a hearing on the motion for summary judgment was held. The trial court found, pursuant to La. C.C. art. 2317.1, the premises owner must have actual or constructive notice of the alleged defect. The trial court noted that Plaintiffs' counsel did not address this provision of the article in its written opposition. At the hearing, counsel for Plaintiffs argued that the failure of the owner to inspect the restroom door constitutes constructive notice. Counsel pointed to Mr. Sanford's expert findings that Defendants had an obligation to ensure that the doors were safely operating. Defendants only claim they had no notice of the defect because they failed to inspect. Consequently, Plaintiffs' counsel argued that any claim that Defendants had no notice is due to their own omissions. Further, Plaintiffs' counsel suggested that Defendants should not be able to claim as an affirmative defense their ignorance of the defective door closing mechanism when they had a duty to inspect, and Defendants elected not to do so.

In support of summary judgment, Defendants argued at the hearing that the evidence submitted indicates that there were no problems with the door before Mrs. Encalade's accident. Counsel for Defendants noted that there was no evidence of reports or complaints made regarding the restroom door's functionality, nor were Defendants aware of any. An independent witness testified to using the bathroom on an almost daily basis and never had any issue with the restroom door. The first time Defendants learned of a problem with the restroom door was when Mrs. Encalade fell. Moreover, counsel for Defendants asserted that Plaintiffs did not prove Defendants' failure to inspect the door was the cause of the accident. Counsel also noted that Mr. Sanford's expert report was "full of conjecture and speculation" and merely asserted a theory of what might have happened to Mrs. Encalade.

After hearing argument, the trial court granted summary judgment in favor of Defendants and dismissed with prejudice Plaintiffs' petition for damages. Plaintiffs timely file this appeal.

### STANDARD OF REVIEW

Appellate courts review summary judgments *de novo. Independent Fire Ins. Co. v. Sunbeam Corp.,* 99–2181, p. 7 (La. 2/29/00), 755 So.2d 226, 230. We use the same standard applied by the trial court in deciding whether summary judgment is appropriate by determining if genuine issues of material fact exist. *Francis v. Union Carbide Corp.,* 12–1397, p. 2 (La.App. 4 Cir. 5/8/13), 116 So.3d 858, 860. Because we apply a *de novo* standard of review, we do not defer to the trial court's judgment or reasons thereof. *Jones v. Buck Kreihs Marine Repair, L.L.C.,* 13–0083, p. 2 (La. App. 4 Cir. 8/21/13), 122 So.3d 1181, 1183 (citing *Cusimano v. Port Esplanade Condominium Ass'n, Inc.,* 10–0477, p. 4 (La. App. 4 Cir. 1/12/11), 55 So.3d 931, 934). Nevertheless, the trial court's reasons for granting or denying summary judgment may be informative, "but it is not determinative of the issues to be resolved by this court." *Id.* (citing *Cusimano,* 10–0477, p. 4–5, 55 So.3d at 935).

### DISCUSSION

Summary judgment is granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact. La. C.C.P. art. 966(B)(2).[2] Facts are mate-

2. La. C.C.P. art. 966 was amended in 2013, 2014, and again in 2015. These amendments

rial if they "insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *FMC Enterprises, L.L.C. v. Prytania–St. Mary Condominiums Ass'n, Inc.*, 12–1634 (La.App. 4 Cir. 5/15/13), 117 So.3d 217, 222 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93–2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751).

The moving party carries the initial burden of showing that no genuine issue of material fact exists, and any doubt regarding a material issue of fact is resolved in favor of a trial on the merits. *Barbarin v. Dudley*, 00–0249, p. 6 (La.App. 4 Cir. 12/20/00), 775 So.2d 657, 660. Where the moving party does not bear the burden of proof at trial, the moving party need only show there is an absence of factual support for one or more essential elements of the claim. *Smith v. Treadway*, 13–0131, p. 4 (La.App. 4 Cir. 11/27/13), 129 So.3d 825, 828. If the moving party makes a prima facie showing that summary judgment should be granted, then the burden shifts to the non-moving party to show genuine issues of material fact remain, precluding summary judgment. *Bush v. Bud's Boat Rental, LLC*, 13–0989, p. 3 (La.App. 4 Cir. 2/26/14), 135 So.3d 1189, 1190 (citing *Oakley v. Thebault*, 96–0937, p. 3 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490). "At that point, if the party opposing the motion 'fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.' La. C.C.P. art. 966(C)(2). Summary judgment should then be granted." *Bush*, 13–0989, p. 3, 135 So.3d at 1190 (citing *Lomax v. Ernest Morial Convention Center*, 07–0092, p. 3 (La.App. 4 Cir. 7/11/07), 963 So.2d 463, 465).

La. C.C. art. 2317.1, enacted in 1996, effectively abrogated strict liability in cases that involve defective things, and in its place imposed a negligence standard based on the owner or custodian's knowledge or constructive knowledge of the defect. *Lawrence v. Sanders*, 49,966, p. 11 (La.App. 2 Cir. 6/24/15), 169 So.3d 790, 797, *writ denied*, 15–1450 (La. 10/23/15), 179 So.3d 601. To prove liability, a plaintiff must show: (1) that the owner or custodian of a thing knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which allegedly caused the damage; (2) that the damage could have been prevented by the exercise of reasonable care; and (3) that the owner or custodian failed to exercise reasonable care. La. C.C. art. 2317.1 (emphasis added); *See also* La. C.C. art. 2322. "Inherent in these elements is that the vice or defect ... causes the injury." *Garrison v. Old Man River Esplanade, L.L.C.*, 13–0869, p. 5 (La.App. 4 Cir. 12/18/13), 133 So.3d 699,-702.

To overcome summary judgment, Plaintiffs must show evidence that genuine issues of material fact exist as to Defendants' actual or constructive knowledge of the allegedly defective door prior to Mrs. Encalade's accident. Plaintiffs' expert stated that door inspections should be made at least annually due to normal wear caused from frequent use. The evidence submitted shows Defendants did not conduct any inspection of the ladies' restroom door before Mrs. Encalade's accident. Mr. Sanford opined that "if such an inspection had taken place, more likely than not the dangerously fast closing (swing) speed would have been discovered and adjustments made to correct it, and the injury caused to Mrs. Encalade ... would never have occurred." Plaintiffs contend that in the

---

are not implicated by the issues presented in this appeal. *See* 2013 La. Acts No. 391, § 1,

2014 La. Acts No. 187, § 1, 2015 La. Acts No. 422, § 1.

exercise of reasonable care, Defendants had a duty to conduct a proper inspection, and thereby discover the malfunctioning closing mechanism. In other words, Defendants' failure to conduct an inspection in effect served to put Defendants on constructive notice of the alleged defect.

We find the evidence upon which Plaintiffs rely does not establish a genuine issue of material fact as to Defendants' constructive knowledge of the allegedly defective door. Constructive knowledge "imposes a reasonable duty to discover apparent defects in things under the defendant's garde." *Tsegaye v. City of New Orleans*, 15–0676 (La.App. 4 Cir. 12/18/15), 183 So.3d 705, 718, *writ denied*, 16–0119 (La. 3/4/16), 188 So.3d 1064 (citing *Ladner v. Trinity Group, Ltd.*, 45,937, p. 9 (La.App. 2 Cir. 2/16/11), 57 So.3d 1197, 1202). A court may find constructive knowledge "if the conditions that caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury." *Id.* (citing *Boutin v. Roman Catholic Church of Diocese of Baton Rouge*, 14–313, p. 6 (La.App. 5 Cir. 10/29/14), 164 So.3d 243, 246–47, *writ denied*, 14–2495 (La. 2/13/15), 159 So.3d 469).

There are no facts from which to infer Defendants had constructive knowledge of the allegedly defective door as required by La. C.C. art. 2317.1. The evidence shows the first notice (actual or constructive) that Defendants had of any issue with the ladies' restroom door was immediately after Mrs. Encalade's accident. At no time prior were Defendants aware of any problems with the door. Similarly, no report was ever filed or complaint ever made regarding the ladies' restroom door or its closing mechanism until Mrs. Encalade's accident. The testimonial evidence of Mrs. Encalade, her daughter Ms. Coleman, the property manager and engineer Mr. Burkart, Defendant property owners, as well as the affidavit of Ms. Talzac all negate the claim that Defendants had actual or constructive knowledge. The proof is absent in this case to establish that the allegedly defective condition existed for some period of time that Defendants could have reasonably learned of its existence and thereby prevent the risk of harm associated with the allegedly unsafe condition. For that reason, we find there can be no inference of constructive knowledge.

Furthermore, in *Todd v. State Through Dep't of Soc. Servs., Office of Cmty. Servs.*, 96–3090, 699 So.2d 35 (La. 9/9/97), the Louisiana Supreme Court discussed the level of proof sufficient to overcome summary judgment. "Proof which establishes only possibility, speculation, or unsupported probability does not suffice to establish a claim." *Id.*, 96–3090, p. 16, 699 So.2d at 43. There is little probative value, for purposes of determining whether issues of fact exist, that something is a mere possibility, "unless it is established with reasonable certainty that all other alternatives are impossible.[ ] Proof to substantiate a claim for damages must be clear and definite and not subject to conjecture." *Id.* (internal citations omitted). If the evidence presented demonstrates only "a possibility of a causative accident or leaves it to speculation or conjecture," a plaintiff's case must fail. *Id.*

A review of Mr. Sanford's report demonstrates that his findings are based in speculation, likelihoods, and possibilities. Mr. Sanford concluded that "more probably than not the ladies bathroom door was closing too quickly." He reasons that "more likely than not" the allegedly defective door and its swing speed would have been discovered and Mrs. Encalade would not have been injured. Likewise,

Mr. Sanford surmised that the ladies' restroom doors "were probably adjusted after the accident." He even goes so far as to speculate that based solely on the demeanor of Mr. Hess in his deposition that he, Mr. Sanford, "would not be surprised if [Mr. Hess] made adjustments to these doors or directed that they be made. Perhaps he does not recall he did so."

Based on the record before us, we find Plaintiffs' expert report merely asserts a theory of causation of Mrs. Encalade's injuries. In that proof to substantiate a claim for damages must be clear, definite, and free from conjecture, we find the proof, as presented in Plaintiffs' expert report, insufficient to overcome summary judgment.

### DECREE

Plaintiffs have not established proof sufficient to show they can meet their evidentiary burden at trial. Plaintiffs failed to show Defendants had constructive knowledge of the allegedly defective condition of the door. Additionally, Plaintiffs' expert report only asserts a theory of causation and is insufficient to overcome summary judgment. Consequently, Defendants have shown there is a lack of evidence to support at least one of the essential elements of Plaintiffs' negligence claim pursuant to La. C.C. art. 2317.1. We find summary judgment appropriate. Therefore, we affirm the trial court's judgment granting summary judgment in Defendants' favor and dismissing Plaintiffs' negligence claim with prejudice.

**AFFIRMED.**

LOBRANO, J., CONCURS IN THE RESULT.

